Arthur John BRYANT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 31A01–0209–CR–365.

Court of Appeals of Indiana.

Jan. 29, 2004.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAKER, Judge.

Appellant-defendant Arthur John Bryant appeals his conviction for Murder,[1] a felony, Theft,[2] a class D felony, and Obstruction of Justice,[3] a class D felony, raising a number of issues. Specifically, Bryant claims entitlement to reversal because: (1) an inculpatory statement he made to his mother at the police station should have been suppressed because it was improperly obtained by detectives who had eavesdropped and recorded the conversation; (2) evidence he offered in an attempt to establish that his father was the individual who had killed his stepmother was improperly excluded; (3) certain song lyrics Bryant wrote that the State introduced into evidence should have been excluded because they were irrelevant and prejudicial; and (4) evidence regarding incidents where he had choked his mother and had threatened her on prior occasions was irrelevant and prejudicial and should have been excluded. Bryant also argues that the sentence imposed was inappropriate. Concluding that none of the errors that Bryant present amount to reversible error, we affirm the convictions and sentence.

*FACTS*

The facts most favorable to the verdict are that seventeen-year-old Bryant was living with his father, Lee, and stepmother, Carol. Kristi—Bryant's mother—determined that she could no longer control her son's behavior. At some point, Bryant had been adjudicated a juvenile delinquent for committing a number of offenses.

It was revealed that Bryant stole from Kristi, threatened her with a baseball bat and choked her on at least one occasion. Bryant had also threatened to kill Carol and expressed hostility toward her in some poetry he had written, which included references to a person being found dead in the trunk of an automobile.

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–43–4–2.

3. Ind.Code § 35–44–3–4.

On Tuesday, January 4, 2000, Bryant and Carol argued. When Lee returned home from work the following day, neither Bryant nor Carol was at home. Lee eventually discovered a note Bryant had written explaining that he was going to spend the night with his friend, Doug Kintner. However, when Carol did not return home, Lee became concerned and telephoned Carol's mother and some other people. Lee also drove to various places in search of his wife. When Carol had still not returned the following day, Lee reported her missing to the police.

The police discovered Carol's vehicle early Saturday morning on State Road 56 in Washington County. At Kristi's suggestion, the police looked inside the trunk and found Carol's dead body wrapped in a comforter. An investigation revealed that Carol had died from asphyxiation as a result of ligature strangulation. Thereafter, the police located Bryant and arrested him in Salem on January 8, 2000. At the time of the arrest, Bryant was approximately one month away from his eighteenth birthday.

It was determined that between Wednesday and Saturday, Bryant had driven Carol's vehicle, with her body inside the trunk. He showed off the car to his friends, gave away some of Carol's jewelry, and sold some of her property to a pawnshop.

After the arrest, Bryant told his mother that he could not take any more of Carol's "crap," and he also had told Lee that "it was either her or me." Tr. p. 1351–55; 1449–50, 1950–52. DNA analysis on a pair of jeans recovered by the police from the trunk of Carol's car showed that the jeans contained Carol's bodily fluids, and that Bryant had worn the jeans.

While at the police station, Detective Richard Bauman of the Harrison County Sheriff's Office attempted to question Bryant. Bryant immediately requested the presence of an attorney, whereupon Detective Bauman permitted him to consult with Kristi in an interview room. However, Detective Bauman and Officer William Whelen secretly listened to the conversation and recorded it by means of a hidden microphone and video camera. While the recording is inaudible, Detective Bauman and the officer both testified "[d]uring the time set for Kristi and [Bryant] to talk, [Bryant] informed her that he had told his father that he had a problem with Carol. He told his father to take care of it or he would. He said he took care of it." Tr. p. 271, 277, 1355. Detective Bauman initially testified at a motion to suppress hearing and in his deposition that he heard this statement as he entered the interview room. However, he changed his testimony at trial, indicating that he heard this statement while secretly listening to the conversation by means of the hidden microphone. While Bryant objected to Officer Bauman's testimony, he failed to object to the statements made by Officer Whelen.

Also at trial, the State established that Bryant enjoyed listening to rap music and would spend time rewriting the lyrics to certain songs. Some of the lyrics Bryant wrote referenced placing a body in the trunk of a car. At some point, the police discovered the poems, and the State offered them into evidence in an effort to insinuate that they foretold Carol's murder.

Bryant's defense at trial was that Lee had committed the murder. In an effort to establish that defense, Bryant made offers of proof to demonstrate that Carol and Lee's relationship was violent. The particular evidence sought to establish that Carol feared Lee and wanted to leave him. Several witnesses testified that Lee had physically attacked Carol several months

before the murder. These witnesses also testified that Lee would choke Carol during his attacks.

Two officers also testified regarding a domestic disturbance that occurred between Lee and Carol on February 5, 1995. Both officers testified that Carol was bleeding and had redness around her neck. A life-long friend also testified about Lee's violent attacks on Carol. Two of Carol and Lee's neighbors testified that they witnessed Lee attack Carol in Carol's front yard on one occasion. Another neighbor witnessed Lee shove Carol in September or October prior to Carol's death. The trial court ultimately excluded the admission of most of this evidence on relevancy and hearsay grounds. The trial court also noted that the prior acts of violence were too remote in time as a basis for his ruling.

At conclusion of the jury trial on August 21, 2001, Bryant was convicted on all counts. Thereafter, the trial court sentenced him to sixty years for Murder, two years and three months for theft, and two years and three months on the obstruction of justice charge. Bryant was ordered to serve the sentences consecutively to each other and consecutive to the sentences that he had received in all other cases. As a result, Bryant was ordered to serve sixty-four and one-half years in this cause, plus the sentences in the other causes for a total of eighty-one and one-half years. Bryant now appeals.

## DISCUSSION AND DECISION

### I. Inculpatory Statements

■ Bryant first claims that he is entitled to a new trial because police officers secretly listened to—and viewed—a conversation that Bryant had with his mother in an interview room at the police station. In essence, Bryant contends that the incriminating statements he made should have been suppressed because the police conduct amounted to a violation of his Fourth Amendment rights under the United States Constitution as well as the rights guaranteed under Article I, Section 11 of the Indiana Constitution. Appellant's Br. p. 8.

Inasmuch as Bryant was seventeen-years-old at the time of his arrest, the provisions of our juvenile waiver of rights statute, Indiana Code section 31–32–5–1, are applicable in these circumstances. In relevant part, this statute makes it clear that a right guaranteed to a child under the United States or Indiana Constitution may be waived only: (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

■ We have observed that strict compliance governing waiver of the constitutional rights of a child is required in order to protect the child's rights. *Hickman v. State*, 654 N.E.2d 278, 281 (Ind.Ct.App. 1995). Moreover, the State must show beyond a reasonable doubt that a juvenile's waiver of the right to remain silent was made knowingly, intelligently and voluntarily, which determination is made from the totality of the circumstances, considering only that evidence favorable to the State and any uncontested evidence. *Tingle v. State*, 632 N.E.2d 345, 352 (Ind. 1994).

■ Inasmuch as Bryant was a juvenile at the time the statements were made, the police could not attempt to question him

without first permitting him to have a meaningful consultation with a parent or guardian. Our juvenile waiver of rights statute requires actual consultation of a meaningful nature. *D.D.B. v. State*, 691 N.E.2d 486, 487 (Ind.Ct.App.1998). Moreover, the consultation can be meaningful only in the absence of police pressure. *Washington v. State*, 456 N.E.2d 382, 383–84 (Ind.1983).

In this case, the evidence shows, and the State concedes, that "police monitoring and videotaping of a consultation between a juvenile and his parent or guardian does not comply with the concept of 'meaningful' consultation." Appellee's Br. p. 8. Moreover, the State acknowledges that "[t]he police action in [this] case certainly violated the spirit of the statute." Appellee's Br. p. 8. Inasmuch as there is no dispute that Bryant never waived his rights, the statements as testified to by Detective Bauman should not have been admitted into evidence. Moreover, we find that in these circumstances, the officers' conduct with regard to the eavesdropping and recording of Bryant's conversation with his mother was particularly reprehensible and egregious.

■ Be that as it may, however, such an error is subject to harmless error analysis. Specifically, this court has determined that erroneously admitted evidence that is merely cumulative of other evidence in the record is harmless and is not grounds for reversal. *Williams v. State*, 782 N.E.2d 1039, 1047 (Ind.Ct.App.2003), *trans. denied*. That is, when a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds, the defendant waives the suppression claim. *G.J. v. State*, 716 N.E.2d 475, 478 (Ind.Ct.App. 1999).

Here, the record shows that Bryant objected at trial to Detective Bauman's state-ment that he overheard Bryant tell Carol that "I told dad I had a problem and if he didn't take care of it, I would, and I did." Tr. p. 1355. However, it is undisputed that Bryant failed to object to the same testimony when it was offered by Officer Whelan. Tr. p. 1447–49. Additionally, Bryant never objected to Kristi's testimony regarding the statement that he had made, as well as others that had been made during the conversation. Thus, inasmuch as Bryant failed to lodge a proper objection, he has not preserved this claim on appeal. As a result, Bryant is not entitled to a reversal on this basis.

## II. Exclusion of Evidence Regarding An Alleged Hostile Relationship Between Lee and Carol

■ Bryant contends that the trial court erred in excluding evidence that Lee had physically abused and attempted to strangle Carol on prior occasions. Specifically, Bryant argues that evidence establishing that Lee attacked Carol during the course of their marriage was admissible to show Lee's motive of hostility to kill Carol. Thus, Bryant contends that the "trial court violated his federal and state constitutional right to present a defense." Appellant's Br. p. 9.

■ In resolving this issue, we note that the trial court is vested with broad discretion in ruling on the admissibility of evidence. *Edmond v. State*, 790 N.E.2d 141, 144 (Ind.Ct.App.2003), *trans. denied*. An evidentiary ruling will be reversed on appeal only for an abuse of that discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances. *Id.* To be sure, a trial court's decision to exclude evidence is afforded great deference on appeal, and that decision will be reversed only for a manifest abuse of discretion that denies the defen-

dant a fair trial. *Swann v. State,* 789 N.E.2d 1020, 1023–24 (Ind.Ct.App.2003), *trans. denied.*

In an effort to demonstrate that Lee was the individual who killed Carol, Bryant sought to introduce evidence of Lee's hostile and violent relationship with Carol. In the offer of proof, Bryant's counsel attempted to establish that Carol feared that Lee would kill her, that Lee would strangle Carol during fights, and that Lee beat her on a regular basis. Tr. p. 1726–29, 1772–83. As will be explained in more detail below, four witnesses alleged that Lee had attacked Carol at a tavern, and one of them believed that the incident had occurred approximately eighteen months prior to Carol's death. Tr. p. 1824. The trial court excluded the evidence, noting that three of the four witnesses were not convincing about the timeframe of the tavern attack. Tr. p. 1889. Thus, it was determined that the incident was too remote in time to be admitted. Tr. p. 1889.

▆▆▆ Pursuant to Indiana Evidence Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that tends to show that someone else committed the offense meets the relevancy definition. *Dickens v. State,* 754 N.E.2d 1, 5 (Ind.2001). Moreover, a defendant has the right to present evidence that another person committed the crime for which the defendant is charged. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind. 1997). Additionally, it has been determined that evidence of motive is relevant in a criminal case. *Cook v. State,* 734 N.E.2d 563, 567 (Ind.2000).

▆▆▆ However, even though certain evidence may be relevant, it may be excluded where inadmissible hearsay is offered or when the evidence involves inadmissible crimes, misconduct or other wrongs. Ind. Evidence Rule 802; Ind. Evidence Rule 404(b). Evidence may also be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 403. The above-cited rules are applicable to a circumstance where a defendant proffers evidence that a third party may have committed the crime. *See Smith v. State,* 754 N.E.2d 502, 504–06 (Ind.2001).

In this case, Bryant proffered evidence from Kathy Hammack that a few months prior to Carol's death, she observed Carol sitting in a car outside of a tavern, that Carol was crying, and that she had a black eye and bruise marks on her neck. In response to Hammock's questions as to what had happened, Carol told Hammack that Lee had tried to kill her. Tr. p. 1774. In our view, such evidence was classic hearsay, inasmuch as it was an out of court statement offered for the truth that Lee tried to kill Carol. *See Davenport v. State,* 749 N.E.2d 1144, 1149 (Ind.2001).

▆▆▆ However, Bryant maintains that the evidence should have been admitted pursuant to the "excited utterance" exception to the hearsay rule. Before evidence may be admitted under this exception, Indiana Evidence Rule 803(2) requires that the statement must relate to a startling event that was made while the declarant was under the stress of the excitement caused by the event. Whether a particular statement qualifies as an excited utterance turns on whether the statement was inherently reliable because the declarant was under the stress of the event and unlikely to make a deliberate falsehood. *Davenport,* 749 N.E.2d at 1148. The time period between the statement and the startling event is one of the factors to be considered. *Hardiman v. State,* 726 N.E.2d

1201, 1204 (Ind.2000). Whether the statement was made in response to an inquiry is also a factor for consideration. *Id.*

Here, there is no evidence relating the amount of time between whatever event caused Carol to be upset and her statement to Hammack. Hammack's testimony that the black eye and slap mark appeared to be recently inflicted fails to provide a reliable gauge for the length of time between the infliction of the injuries and the time that Hammack observed the injuries. In essence, Hammack's opinion that the injuries were "fresh," tr. p. 1772–74, permits only speculation as to whether the startling event was near in time or remote. *See Davenport,* 749 N.E.2d at 1149 (observing that statements made more than one-half hour after the startling event are generally not admissible as excited utterances).

■ Additionally, it is apparent that Carol's statement was made in response to Hammack's inquiry. Such a reaction increases the likelihood that the statements were not made under the stress of the startling event. *See Davis v. State,* 796 N.E.2d 798, 802–03 (Ind.Ct.App.2003) (observing that the key factor under this exception to the hearsay rule is that the declarant be under the stress of the precipitating event when the statement is made). Moreover, it is apparent that Carol was capable of rational thought because the evidence also established that Carol attempted to call other members of her family to pick her up after the alleged incident had occurred. Tr. p. 1775.

In some instances, our trial courts have admitted statements under this exception when several hours have elapsed between the event and the statements. *See Lieberenz v. State,* 717 N.E.2d 1242, 1246 (Ind. Ct.App.1999), (observing that a rape victim's statement that she made to a police a number of hours after the incident was admissible under the excited utterance exception). Moreover, we have recognized that while a statement is generally less likely to be admitted if it is made long after the startling event, the amount of time that has passed is not dispositive. *Id.*

In this case, it is apparent that the trial court made the determination that Carol was not under the stress of excitement caused by the startling event when the statement was made, and we decline to second-guess that determination. Thus, under these circumstances, we cannot say that the trial court abused its discretion in concluding that Hammack's testimony relating Carol's statement should not have been admitted.

■ In a separate but related argument, Bryant maintains that Carol's alleged later statement that she made to Hammack that Lee said he would "kill us all," tr. p. 1774–76, was admissible under the hearsay exception known as "present sense impression." This exception to the hearsay rule applies to statements that describe or explain "a material event, condition or transaction, made while the declarant was perceiving the event, condition or transaction, or immediately thereafter." Ind. Evidence Rule 803(1). We note that Bryant has raised this contention for the first time on appeal. Thus, it is waived. *See Taylor v. State,* 710 N.E.2d 921, 923 (Ind.1999) (holding that a defendant is limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility of statements for the first time on appeal). To be sure, an offer of proof should identify not only anticipated testimony, but also the grounds on which the evidence is believed to be admissible. *Id.* Because Bryant did not advance the theory of present sense impression for the admission of Hammack's testimony at the trial level, his claim fails.

Bryant also proffered evidence from Barbara Buchanan, Jewel Corn, Anthony Shirley, and William Noe concerning an incident at a tavern where Lee allegedly punched Carol, as well as evidence suggesting that while Carol worked at the tavern she often would appear with bruises and marks on her neck. Tr. p. 1788–1827. With the exception of Noe, the witnesses could not state with any certainty as to when the incident occurred. According to Noe, the incident occurred in August, 1998, and Carol was killed on January 5, 2000. Tr. p. 1827. Thus, the prior misconduct evidence that Bryant proffered regarding Lee concerned events nearly one-and-one-half years before Carol died. As a result, we conclude that the trial court properly concluded that this evidence was too remote to have any probative value. *See Roop v. State,* 730 N.E.2d 1267, 1270 (Ind. 2000).

We also observe that the evidence Bryant offered establishing that Carol told Buchanan that Lee said he would kill her sooner or later, and testimony from Shirley that Carol told him Lee choked her was likewise too remote. Bryant contends, however, that this evidence showed Carol's fear of Lee, and should have been admissible under the "state of mind" exception to the hearsay rule.

Indiana Evidence Rule 803(3) indeed recognizes such an exception to the hearsay rule. However, this exception is limited to three situations: (1) to show the intent of the victim to act in a particular way; (2) where the victim's state of mind is placed in issue; and (3) sometimes to explain physical injuries suffered by the victim. *Hatcher v. State,* 735 N.E.2d 1155, 1161 (Ind.2000).

Here, Bryant maintains that Carol's then-existing state of mind was placed in issue by Lee's testimony. During the State's case-in-chief, Lee admitted that he had once questioned Carol about whether she was having an affair. Tr. p. 1530. Lee further testified that Carol went along with him whenever his band played. Tr. p. 1536–37. Contrary to Bryant's argument, such evidence did not portray Lee and Carol's relationship as ideal. Thus, we cannot say that Carol's then existing state of mind was placed into evidence by this testimony. Rather, it was not until Lee was questioned during Bryant's case-in-chief that he made the statements that his relationship with Carol was good, that it had some "ups and downs," and there was no argument regarding Carol's purported threats to leave him. Tr. p.2035–39. Inasmuch as this testimony was offered before Lee testified for the defense, Bryant may not successfully claim that the State opened the door to such evidence. Bryant is therefore prohibited from "bootstrapping" this evidence into admission by offering it and then claiming that the State put it in issue. *See Bassett v. State,* 795 N.E.2d 1050, 1052 (Ind.2003) (recognizing that the State could not admit then existing state of mind evidence where the defendant did not put the victim's state of mind in issue); *see also Willey v. State,* 712 N.E.2d 434, 444 (Ind.1999).

Bryant then sought to offer evidence from police officers regarding Lee's battery of Carol in 1995 that occurred five years before Carol's murder. Tr. p. 1828–35; 1856–62. Our supreme court has recognized that evidence of prior bad acts greater than three years from the date of the charged incident has low probative value. *See Spencer v. State,* 703 N.E.2d 1053, 1056 (Ind.1999). As a result, Bryant has failed to show that the trial court abused its discretion in excluding the proffered testimony of Lee's prior bad acts from 1995.

In our view, it is readily apparent that Bryant proffered this evidence to es-

tablish the "forbidden inference" that if Lee had choked Carol before, then he likely choked her and caused her death. Such evidence is inadmissible for not only the prior bad acts of the defendant, but for other witnesses as well. *See Garland v. State*, 788 N.E.2d 425, 430 (Ind.2003) (holding that the admissibility of prior bad acts by persons other than defendants is subject to Indiana Evidence Rule 404(b)).

Finally, contrary to Bryant's argument that he was denied the opportunity to present a defense, the trial court permitted him to present evidence of Lee's prior bad acts against Carol that were closer in time to the date of her murder. Tr. p. 1897–98, 1901, 1906, 1909–10, 1913–14. Thus, we conclude that there was no error with respect to this issue.

### III. Admission of Bryant's Lyrics

■ Bryant next claims that the trial court improperly allowed some song lyrics he had composed to be admitted into evidence as well as the fact that he enjoyed rap music. Bryant contends that this evidence was irrelevant, prejudicial and constituted impermissible character evidence. Therefore, he claims entitlement to a reversal on this basis.

At trial, the State offered two rap song lyrics that Bryant either composed or plagiarized. The exhibits were offered as an indication of Bryant's intent regarding Carol's murder. Both sets of lyrics contained the line: "Cuz the 5–0 won't even know who you are when they pull yo ugly ass out the trunk of my car." Ex. 104, 105. Again, evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Inasmuch as Carol's body was recovered from the trunk of her car, and Bryant had driven that vehicle for several days visiting friends and telling them that he was the owner, the reference in the exhibits to finding a body in the trunk of "my car" made it more probable that Bryant killed Carol and placed her body in the trunk. Thus, such evidence was relevant, and the trial court did not abuse its discretion in admitting the exhibits on this basis.

■ Additionally, while some of the language in the exhibits could be construed as highly prejudicial to Bryant because they contain profanity, racial slurs, degrading references to women and references to murder and drug use, he failed to argue at trial that any part of the poems should be redacted. To the contrary, Bryant maintained that the exhibits had to be admitted in their entirety if the trial court was going to allow them. Tr. p. 1516–20. As a result, Bryant invited any unfair prejudice that stemmed from the admission of the exhibits. To be sure, a defendant is precluded from inviting an error at trial and subsequently arguing on appeal that the error requires a reversal. *M.T. v. State*, 787 N.E.2d 509, 513 (Ind.Ct. App.2003).

Bryant goes on to maintain, however, that the exhibits tended to establish only that he was of bad character and impermissibly implied that he killed Carol. Thus, Bryant contends that the lyrics should have been excluded under Indiana Evidence Rule 404(b).

■ In addressing this contention, we note that evidence of prior bad acts, crimes or wrongs allegedly committed by the defendant that are used to prove the defendant's character and show that he acted in a like manner in the present case are prohibited. *Oldham v. State*, 779 N.E.2d 1162, 1171 (Ind.Ct.App.2002), *trans. denied.* We have observed that the purpose of Rule 404(b) is to prevent the jury from assessing the defendant's guilt

in the present case on the basis of his past propensities. *Ziebell v. State*, 788 N.E.2d 902, 908 (Ind.Ct.App.2003). Evidence of prior bad acts, crimes, or wrongs by the defendant is not admissible where it is offered for the sole purpose of producing the forbidden inference that the defendant's present charged conduct is in conformity with his prior bad conduct. *Udarbe v. State*, 749 N.E.2d 562, 564 (Ind. Ct.App.2001). Such evidence, however, is admissible if it bears on some issue other than a defendant's criminal propensity and its probative value is not substantially outweighed by the danger of unfair prejudice. *See Craun v. State*, 762 N.E.2d 230, 236 (Ind.Ct.App.2002), *trans. denied.* The trial court's admission of prior bad acts or misconduct evidence will be affirmed on appeal if it is sustainable on any basis in the record. *Id.*

Here, Bryant has failed to show that the exhibits constituted evidence of any prior crime or misconduct. Even so, it has been established that prior crimes, misconduct, or bad acts evidence may be admitted if that evidence is relevant to the issue of a defendant's intent. Evid. R. 404(b); *Murray v. State*, 742 N.E.2d 932, 934 (Ind. 2001). This exception, however, is limited to those instances where the defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particularly contrary intent. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind. 2000). Throughout these proceedings, Bryant's defense was that he did not murder Carol, but that someone else did. To be sure, Bryant specifically accused his father of committing the murder. Thus, Bryant specifically and affirmatively placed before the jury a contrary intent concerning the charged offenses. Under these circumstances, the exhibits were relevant on the contested issue of Bryant's intent because the exhibits tended to show

that he had a hostile and violent attitude towards Carol.

In addition to the above, it has also been established that prior misconduct evidence may be admitted to rebut a specific factual claim raised by the defendant. *Koo v. State*, 640 N.E.2d 95, 101 (Ind.Ct.App. 1994), *trans. denied.* The exhibits, containing the reference to the police finding a body in the trunk of a car, were relevant to rebut Bryant's claim that Lee murdered Carol. *See Evans v. State*, 727 N.E.2d 1072, 1080 (Ind.2000) (recognizing that evidence of a defendant's prior bad acts is relevant to directly rebut the defendant's claim that another person was the initial aggressor). Thus, it was reasonable for the trial court to have admitted the exhibits on this basis.

Finally, while the exhibits may have been relevant, our inquiry does not stop here. That is, we must also determine whether the trial court abused its discretion in balancing the probative value of the exhibits against the tendency to prejudice the defendant. *Id.* at 1079. Properly relevant prior misconduct or evidence of bad acts is inadmissible only where its probative value is substantially outweighed by the danger of unfair prejudice. *See Crain*, 736 N.E.2d at 1236. As indicated above, it was Bryant who insisted on including the exhibits in their entirety if any part of them was to be admitted. Thus, Bryant invited any unfair prejudice resulting from the contents of the exhibits, and he cannot now claim error on such grounds.

### IV. Bryant's Prior Acts of Violence Against Kristi

Bryant next claims that the trial court abused its discretion in admitting evidence that he had attempted to choke Kristi and chase her with a baseball bat on a prior occasion. Bryant maintains that

this evidence constituted irrelevant and prejudicial character evidence and that the alleged attacks on Kristi had no relevance as to whether he had murdered Carol.

Although Bryant attacks the admission of the evidence on relevancy grounds, our supreme court has determined that evidence that is otherwise inadmissible may become admissible when the defendant opens the door to questioning on that evidence. *Kubsch v. State*, 784 N.E.2d 905, 919 n. 6 (Ind.2003). In order to open the door, the evidence relied upon must leave the trier of fact with a false or misleading impression of the facts related. *Ortiz v. State*, 741 N.E.2d 1203, 1208 (Ind. 2001).

Here, during the direct examination of defense witness Stephanie Ringer, who was Bryant's parole officer, Bryant's counsel asked about her knowledge as to why Bryant stopped living with Kristi. In response, Ringer testified that Bryant moved out and lived with his father because of an incident where Bryant had taken Kristi's truck and driven it to another county. During a sidebar conference, the State maintained that Bryant had opened the door during Ringer's testimony to questioning regarding the additional and complete reasons why Bryant went to live with his father. The trial court agreed, and the State was then permitted to pursue that line of questioning. Tr. p.1943. Kristi then testified that Bryant was "out of control," and she thought that his father could do better. Tr. p.1944. Kristi then acknowledged that she was afraid of Bryant, that he stole checks from her and that, on one occasion, he chased her with a baseball bat and choked her. Tr. p.1944–46.

In light of this testimony, it is quite apparent that Ringer's response to Bryant's questioning left the jury with the false and misleading impression that Kristi sent Bryant to live with his father only because he took her truck without permission on one occasion. Based upon Kristi's response to the State's questioning, the real reason that Bryant went to live with Lee was because Bryant was out of control, Kristi was afraid of him, and he had tried to kill her. In other words, the situation that actually occurred was markedly different than portrayed from Bryant's questioning of Ringer. Inasmuch as Bryant first injected into the trial the subject of why Kristi sent him to live with his father, the State could conduct further questioning on the subject and present the jury with the complete factual situation. *See Kubsch*, 784 N.E.2d at 919 (holding that where a defendant presented evidence that he did not have access to a handgun, the door was opened to hearsay evidence that the defendant in fact had access to a handgun). Thus, we cannot say that the trial court abused its discretion by allowing into evidence the testimony from Bryant's mother regarding the true reason why she sent him to live with his father.

### V. *Inappropriate Sentence*

As a final issue, Bryant contends that he was inappropriately sentenced. Specifically, he maintains that the trial court erred in finding that Bryant's history of substance abuse was an aggravating circumstance. He also contends that the trial court erred in failing to assign significant weight to his youthful age and urges that the sentence was inappropriate "given [his] alleged offense and his character." Appellant's Br. p. 10.

### A. *Aggravating and Mitigating Circumstances*

In determining whether a sentence is appropriate, we consider the factors listed as aggravators and mitigators under Indiana Code section 35–38–1–7.1, each of which is merely "an amplification" of the considerations of the nature of the

offense and character of the offender addressed by Appellate Rule 7(B). We examine the record to determine whether the trial court sufficiently explained its reasons for selecting the sentence it imposed. *Sipple v. State*, 788 N.E.2d 473, 479–80 (Ind. Ct.App.2003), *trans. denied.*

 The trial court is not required to find mitigating factors, or to accept as mitigating, the circumstances proffered by the defendant. *Powell v. State*, 751 N.E.2d 311, 317 (Ind.Ct.App.2001). Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked. *Kien v. State*, 782 N.E.2d 398, 415 (Ind.Ct.App.2003), *trans. denied.* However, it is in the sole discretion of the trial court to determine which aggravating and mitigating circumstances to consider and to determine the weight accorded each of these factors. *Perry v. State*, 751 N.E.2d 306, 309 (Ind.Ct.App. 2001). Moreover, the trial court is not obligated to explain why it has found that a proffered mitigating factor does not exist. *Creager v. State*, 737 N.E.2d 771, 782 (Ind.Ct.App.2000), *trans. denied.*

 With respect to aggravating circumstances, the existence of only one is sufficient to support an enhanced sentence. *Buzzard v. State*, 712 N.E.2d 547, 554 (Ind. Ct.App.1999), *trans. denied.* When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Bacher v. State*, 722 N.E.2d 799, 803 (Ind.2000).

 Before imposing the sentence, the trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances

have been weighed to determine that the aggravators outweigh the mitigators. *Powell*, 751 N.E.2d at 315. A sentence enhancement will be affirmed if, after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B).

At the sentencing hearing, the trial court identified the following as aggravating circumstances: (1) Bryant's criminal history; (2) his extensive illegal drug activity; and (3), that Bryant, based upon his character and condition, attitude, and risk of committing criminal offenses in the future, is in need of correctional rehabilitative treatment that can best be provided in a penal facility. Tr. p. 2262–63. With respect to the mitigating circumstances, the trial court noted Bryant's youth, his difficult childhood and the fact that he had been depressed and suicidal on occasion.

With regard to Bryant's argument that his drug abuse history should have been considered a mitigating circumstance rather than an aggravator, we note that he failed to present this claim at the sentencing hearing. Thus, he has waived the issue. *See Simms v. State*, 791 N.E.2d 225, 233 (Ind.Ct.App.2003). Moreover, the record demonstrates that Bryant was aware of his drug and alcohol problem, yet he had not taken any positive steps to treat his addiction. Tr. p. 500–03. Thus, the trial court did not err in determining that his substance abuse was an aggravating factor. *See Bennett v. State*, 787 N.E.2d 938, 948 (Ind.Ct.App.2003), *trans. denied* (holding that the defendant's alcoholism could properly have been considered an aggravating circumstance); *Hornbostel v. State*, 757 N.E.2d 170, 184 (Ind. Ct.App.2001), *trans. denied* (recognizing that drinking is not to be considered a mitigating circumstance).

While Bryant also contends that the trial court failed to give sufficient weight to the mitigating factor of his youth, our supreme court has held that youthful age does not "automatically" qualify as a significant mitigator. *See Gross v. State,* 769 N.E.2d 1136, 1141 n. 4 (Ind.2002). Moreover, Bryant was not so "youthful." Specifically, he was only one month shy of his eighteenth birthday when he murdered Carol. Under these circumstances, we cannot say that the trial court abused its discretion in finding Bryant's youth to be only a moderate mitigating circumstance. Finally, when considering the factors identified by the trial court at sentencing, it is apparent to us that the relevant aggravators and mitigators were sufficiently considered and balanced. Thus, Bryant's claim with respect to this issue must fail.

### B. *Appropriateness*

Having evaluated the aggravating and mitigating factors in this case, the question remains as to whether the sentence is inappropriate pursuant to Appellate Rule 7(B) and must be revised. Under Appellate Rule 7(B), a court is to initially focus on the presumptive sentence that may be imposed following a conviction for a particular class of felony. *Rodriguez v. State,* 785 N.E.2d 1169, 1179 (Ind.Ct. App.2003), *trans. denied.*

In essence, Bryant argues that his sentence is inappropriate because he was not among the worst of offenders. At the sentencing hearing, the trial court considered Bryant's character and observed that he had no respect for Carol or for his own mother. Tr. p. 2261. The trial court went on to note that Bryant was not credible. Tr. p. 2262.

As recounted above, the evidence established that Bryant strangled Carol and hid her body inside the trunk of her car, which he then stole. Bryant then stole jewelry, sold or gave some of it away and drove Carol's vehicle around town. All these actions occurred while Carol's dead body was in the trunk of the vehicle. Additionally, Bryant sought to escape responsibility for the offense by attempting to implicate his father in the crime. Tr. p. 1568–76.

We note that Bryant was not sentenced to the maximum and consecutive sentences that could have been imposed for the commission of these offenses. As a result, when considering the nature of the offenses and Bryant's character, we cannot say that the sentence Bryant received was inappropriate. Thus, the sentence may stand, and we decline to revise it.

### CONCLUSION

In light of our discussion of the issues above, we conclude that the eavesdropping and recording of the conversation by police officers that Bryant had with his mother after the arrest, though inappropriate and appalling, did not give rise to reversible error in these circumstances. We also note that the trial court did not abuse its discretion in excluding evidence pertaining to the allegedly hostile relationship between Carol and Lee, and further hold that the trial court did not err in admitting the song lyrics into evidence that Bryant had written. Moreover, we conclude that the trial court properly admitted evidence of prior injuries that Bryant had inflicted upon Kristi as well as evidence that Kristi feared Bryant. Finally, we decline to revise Bryant's sentence.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.