# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SCOTT KING**
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MICHAEL R. SUDBERRY, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 45A03-1206-CR-298 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1108-FB-76

**February 18, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

During a physical altercation, Michael R. Sudberry threw a pan of hot water on his brother, who sustained second degree burns. At trial, Sudberry raised the defense of self-defense. Thereafter, the State was allowed to present evidence that Sudberry had previously threatened his brother. The jury found Sudberry guilty of battery resulting in serious bodily injury.

On appeal, Sudberry argues that the trial court abused its discretion by admitting testimony about his earlier threat because it was too remote in time to be probative of his intent. The threat was made approximately a year before the battery, but the evidence reflected that nothing had happened during that time to cause Sudberry to act on his threat. We conclude that the trial court did not abuse its discretion by admitting the evidence. Sudberry also argues that the State failed to rebut his claim of self-defense. The evidence favorable to the verdict supports a conclusion that Sudberry was a mutual combatant and did not communicate an intent to withdraw from the fight, that he escalated the fight, and that he used more force than was reasonably necessary. Thus, the evidence was sufficient to rebut his claim of self-defense, and we affirm his conviction.

**Facts and Procedural History**

Sudberry and his brother, Kenneth Sudberry, both moved in with their mother, who has poor health, eyesight, and hearing. On the morning of August 27, 2011, Kenneth sat down at the kitchen table next to his mother to have breakfast. Sudberry stated that he had been sitting there, but Kenneth refused to move. Sudberry picked up a glass of water and

dumped it on Kenneth. Kenneth got up, filled a glass with water, and threw the water on Sudberry. The brothers then started pushing each other.

According to Kenneth, neither of them punched or kicked the other. After they stopped pushing each other, Sudberry picked up a pencil and stabbed Kenneth in the abdomen. Kenneth pushed Sudberry toward the bathroom, and Sudberry fell to the floor in the bathroom. Kenneth initially blocked Sudberry from getting back to the kitchen, but then let him pass. Kenneth claimed that Sudberry picked up a pot of hot water from the stove and "then proceeded to stand directly in my face to yell and spit in my face. And he said, ['P]ush me again.[']" Tr. at 78. Kenneth moved Sudberry "out of [his] face with [his] shoulder" and stepped back. *Id*. Sudberry then threw the water on him. Kenneth fell to the floor, and Sudberry hit him with the pot and pressed it against his face. Kenneth managed to get up and push Sudberry again.

Sudberry then went to his room, and Kenneth called the police. Officers Marla Guye and Troy Campbell responded to the scene. Officer Guye attended to Kenneth and observed that he had a scratch from the pencil and his skin was peeling off where the water had hit him. Kenneth was taken to a hospital, where he was treated for second-degree burns to the left side of his face, neck, shoulder, and arm.[1]

---

[1] Kenneth's medical records related to these injuries were admitted into evidence as State's Exhibit 29. Indiana Administrative Rule 9(G)(1)(b)(xi) excludes from public access:

> [a]ll medical, mental health, or tax records unless determined by law or regulation of any governmental custodian not to be confidential, released by the subject of such records, or declared by a court of competent jurisdiction to be essential to the resolution of litigation as declared confidential by Ind. Code §§ 16-39-3-10, 6-4.1-5-10, 6-4.1-12-12, and 6-8.1-7-1.

Pursuant to Indiana Trial Rule 5(G):

> (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked "Not for Public Access" or "Confidential."
>
> (2) When only a portion of a document contains information excluded from public access pursuant to Administrative Rule 9(G)(1), said information shall be omitted [or redacted] from the filed document, and set forth on a separate accompanying document on light green paper conspicuously marked "Not for Public Access" or "Confidential" and clearly designated [or identifying] the caption and number of the case and the document and location within the document to which the redacted material pertains.

Kenneth's medical records were not tendered on light green paper, nor was any effort made to redact personal identifiers such as Kenneth's date of birth.

> Administrative Rule 9(G)(1.2) provides:
>
> During court proceedings that are open to the public, when information in case records that is excluded from public access pursuant to this rule is admitted into evidence, the information shall remain excluded from public access only if a party or a person affected by the release of the information, prior to or contemporaneously with its introduction into evidence, affirmatively requests that the information remain excluded from public access.

Thus, on the face of the rule, Kenneth's medical records are no longer excluded because no objection was made.

However, in this case, there was a separation of witnesses in effect. Kenneth's medical records were not admitted during his testimony; thus, it would appear that he was not only absent from the courtroom when his medical records were admitted, but he was *not allowed* to be present. Furthermore, it is unclear whether Kenneth even knew that the State intended to offer his medical records into evidence. State's Exhibit 29 contains a document titled "Authorization for Access, Use or Disclosure of Protected Health Information." The form advises that the patient has the "right to revoke this authorization at any time." *Id*. At the bottom is a line that reads, "Signature of Patient or Legal Representative," and a signature purporting to be Kenneth's appears above that line. *Id*. However, there is a second line that reads, "If Signed by Legal Representative, Relationship to Patient," and illegible writing appears above that line. *Id*. Thus, it is unclear whether Kenneth personally authorized the release. Even assuming that he did sign the release and never revoked his authorization, there is no indication that he intended to allow the State to submit them into evidence at a public trial in a completely unredacted format.

This case is a perfect illustration of how Administrative Rule 9 often creates a Catch-22 for non-parties. A non-party's confidential information can become a matter of public record unless an objection is made, but Administrative Rule 9 does nothing to insure that non-parties are provided a meaningful opportunity to object. The proponent of the evidence is not required to notify the non-party that confidential information affecting the non-party is going to be offered into evidence. Nor does the rule make an exception to the contemporaneous objection requirement when the non-party has been excluded from the court pursuant to a separation of witnesses order, which is frequently requested by the parties. While we believe that disclosures of a non-party's confidential information are most often an oversight, Administrative Rule 9 carries potential for deliberate abuse. We urge the supreme court to reconsider how Administrative Rule 9 applies to non-parties.

4

Officer Campbell arrested Sudberry, read him his *Miranda* rights, and took him to the police department. Officer Campbell noticed that Sudberry had some scratches on his arms and some redness on his face. Sudberry told Officer Campbell that Kenneth had hit him and knocked him down twice. He claimed that he then picked up the pot and told Kenneth to stop hitting him. He stated that Kenneth hit him in the chest, and he threw the hot water at Kenneth.

Detective JerVean Gates was assigned to further investigate the case. He spoke to Sudberry's mother, but she was unable to say who started the fight. Sudberry gave a videotaped statement to Detective Gates on August 29, 2011. At that time, Sudberry did not have any visible injuries, but he claimed that he was sore and had loose teeth. The video reflects that Sudberry tried to show his loose teeth, but Detective Gates denied being able to see that his teeth were loose. Sudberry claimed that Kenneth had initiated the fight. He stated that Kenneth was punching him, and he was unable to punch him back. Sudberry stated that he felt like he had done everything he could to end the fight and was acting in self-defense when he threw the hot water on Kenneth. Sudberry said that, after the fight, he went to his room and changed his shirt, which had been torn, and he called his girlfriend to tell her that he would probably be going to jail.

Sudberry was charged with four counts of battery: count I was charged as a class B felony and alleged that the injury created a substantial risk of death or caused serious permanent disfigurement; count II was charged as a class C felony and alleged that he caused serious bodily injury; count III was charged as a class C felony and alleged that the hot water

was a deadly weapon; and count IV simply alleged battery as a class A misdemeanor. Prior to trial, the State filed notice of intent to present evidence that Sudberry had previously threatened Kenneth. The trial court initially disallowed this evidence.

Sudberry's trial was held on April 9 and 10, 2012. Kenneth testified to his version of the story. Kenneth testified that his treatment for the burns took several months and that he has lasting effects including a burning sensation, scarring, and stiffness. Sudberry did not testify, but his self-defense claim was placed at issue through Officer Campbell's report and the taped statement to Detective Gates.

Thereafter, the State was permitted to recall Kenneth and question him about the prior incident with Sudberry in order to rebut Sudberry's claim that he acted in self-defense. On June 29, 2010, Kenneth, Sudberry, and their mother were in their mother's bedroom having a discussion "about family matters. Probably something having to do with [Kenneth and Sudberry] not getting along." *Id*. at 293. Sudberry left the room and pushed Kenneth out of his way as he did so. Kenneth pushed him back. Sudberry then went to his room and got a knife. He told Kenneth, "[I]f you push[ ] me again, I will kill you." *Id*. at 291. Kenneth testified that there were no other physical altercations between him and Sudberry between June 29, 2010, and August 27, 2011.

The jury found Sudberry guilty of counts II and IV, not guilty of count I, and deadlocked as to count III. The State moved to dismiss count III, and judgment was entered on count II only.

<h3 style="text-align:center">Discussion and Decision</h3>

Sudberry raises two issues: (1) whether the trial court abused its discretion by admitting evidence of his earlier threat against Kenneth; and (2) whether the State presented sufficient evidence to prove that he did not act in self-defense.

### *I. Admission of Evidence*

The trial court is vested with broad discretion in ruling on the admissibility of evidence. *Bryant v. State*, 802 N.E.2d 486, 494 (Ind. Ct. App. 2004), *trans. denied*. "An evidentiary ruling will be reversed on appeal only for an abuse of that discretion. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances." *Id*. (citation omitted).

Sudberry argues that his prior threat against Kenneth was inadmissible pursuant to Indiana Evidence Rule 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ….

Evidence that would otherwise be excluded by Evidence Rule 404(b) is admissible if the court determines that: (1) the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act; (2) there is sufficient proof that the defendant in fact committed the act; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009); *see also* Ind. Evidence Rule 403 (relevant evidence may be excluded if probative value is substantially outweighed by danger of unfair prejudice).

7

Sudberry does not dispute that he placed his intent at issue during the trial by raising the issue of self-defense. *See Fisher v. State*, 641 N.E.2d 105, 108 (Ind. Ct. App. 1994) ("When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense.") (quoting *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993)). Nor does he contend that there was insufficient evidence that he in fact threatened Kenneth.

Sudberry's sole contention is that the threat was too remote in time to be relevant and probative of his intent at the time of the battery. Sudberry compares his case to *Bryant*. Bryant was accused of murdering his stepmother. At trial, Bryant attempted to prove that his father was the murderer. In support of his theory, Bryant wanted to present evidence that his father had punched his stepmother approximately eighteen months before her death. The trial court concluded that the incident was too remote to have any probative value, and we agreed. *Bryant*, 802 N.E.2d at 497.

The State compares Sudberry's case to *Berry v. State*, 704 N.E.2d 462 (Ind. 1998). Berry was accused of killing his grandmother and his parents. A van similar to Berry's was seen driving at a high rate of speed away from their home around the time of the murders. A few days later, he was located in another county, led the police on a high speed chase, and managed to escape. A few weeks later, he was finally apprehended in Illinois. At trial, the State presented evidence that "that relations were strained and that the defendant often

8

argued with his parents about his lifestyle, particularly his failure or refusal to find employment." *Id*. at 464. Berry's brother testified that there had been an argument between Berry and his parents approximately six months prior to the murders, during which Berry had said, "I will kill you all and then leave." *Id*. Berry was convicted of the murders, and on appeal, he argued that his brother's testimony about the threat was inadmissible pursuant to Evidence Rules 404(b) and 403. Our supreme court held that the threat was not too remote in time to be admissible, that it "showed the degree to which relations had become strained," and that the seriousness of the threat "was a matter of weight for the jury to decide." *Id*.

Sudberry's threat to Kenneth occurred a little over a year before the battery; thus, it was not as remote as the incident in *Bryant*, but less recent than the threat in *Berry*. Sudberry threatened to kill Kenneth if he pushed him again. Kenneth testified that there were no physical altercations between him and Sudberry between the date of the threat and the date of the battery. Thus, a reasonable jury could conclude that Sudberry did not have a reason to act on his threat until the date of the battery. Sudberry notes that he did not carry out his threat – he did not kill Kenneth; however, the evidence was undisputed that Sudberry severely injured Kenneth and that Kenneth received assistance only because he managed to call 911 himself. We agree with the State that this case is more comparable to *Berry* than *Bryant*; therefore, we conclude that the trial court did not abuse its discretion by admitting the evidence of Sudberry's threat.

9

## II. Sufficiency of Evidence

Sudberry argues that the State did not rebut his claim of self-defense. To prevail on a claim of self-defense, the defendant must show that he: (1) was in a place where he had the right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Id*.

> The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. We neither reweigh the evidence nor judge the credibility of witnesses. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed.

*Id*. at 801. A person is not justified in using force if "the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." Ind. Code § 35-41-3-2(g)(3). A claim of self-defense will also fail if the person "uses more force than is reasonably necessary under the circumstances." *Harmon v. State*, 849 N.E.2d 726, 731 (Ind. Ct. App. 2006).

The evidence favorable to the verdict is that Sudberry and Kenneth spilled some water on each other and started pushing each other. After a pause in the fight, Sudberry picked up a pencil and stabbed Kenneth with it. Kenneth pushed Sudberry to the floor, but allowed him to get up and return to the kitchen. Sudberry then threw a pot of hot water on Kenneth. Kenneth fell to the floor, and Sudberry hit him with the pot and pressed it against his face.

10

This evidence supports a conclusion that Sudberry was a mutual combatant and did not withdraw from the fight or communicate an intent to do so; alternatively, it supports a conclusion that Sudberry escalated the fight and used more force than was reasonably necessary. Therefore, we conclude that there was sufficient evidence to rebut Sudberry's claim of self-defense, and we affirm his conviction.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.