## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 15 2020, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tyler Helmond
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Buckman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 15, 2020

Court of Appeals Case No.
19A-CR-2871

Appeal from the Vanderburgh Superior Court

The Honorable Robert J. Pigman, Judge

Trial Court Cause No.
82D03-1907-F4-4492

**Rucker, Senior Judge.**

# Case Summary

William Buckman appeals his ten-year sentence for causing death when operating a motor vehicle with a Schedule I or II controlled substance in his blood. The sole issue Buckman raises is whether his sentence is inappropriate in light of his character and the nature of the offense. Concluding Buckman has not carried his burden of persuasion, we affirm.

# Facts and Procedural History

At about 8:00 a.m. on Monday February 12, 2019 police officers were dispatched to First Avenue and Diamond Avenue in Evansville for a report of an accident with injuries. The accident involved four vehicles all of which came to rest in the southbound lanes just north of Diamond Avenue. Witnesses reported that several vehicles in the southbound lane were stopped for a red light. While they were stopped a silver Ford Escape driven by Buckman was traveling north on First Avenue when it ran the red light, crossed the center line into the southbound lane, and struck another vehicle head on. The impact pushed the vehicle backwards into a second vehicle which in turn collided with a third vehicle. One witness estimated the speed of the Ford Escape at "about 60 [miles per hour]." Appellant's App. Vol. 2 p. 22.

The first vehicle in the crash was driven by Darla Smith who was transported to Deaconess Hospital where she was pronounced dead upon arrival. A later autopsy revealed Smith died as a result of blunt force trauma to the chest. Her car was pushed into a car driven by Victor Montgomery who was also

transported to Deaconess Hospital complaining of chest pains. He suffered broken ribs and internal bleeding. In turn Montgomery's car was pushed into a car driven by Sarah May. She too was transported to Deaconess Hospital for treatment of pain throughout her body. As a result of the collision May suffered severe whiplash, a severe concussion and Post Traumatic Stress Disorder. At the time of the collision May was a thirteen-year United States Army veteran who expected to make a career of the military. However, as a result of the injuries suffered in the collision May's doctors recommended the military to discharge May because she was no longer fit to serve this country. May's eighteen-month old son who was a passenger and secured in a car seat suffered pain in his back and neck. "He has night terrors and wakes up screaming in the middle of the night." Tr. Vol. 2 pp. 22-23. According to May, "[t]his man ended my military career. This man altered my life and my son's life." *Id.* at 23.

[4] At the scene Buckman admitted to a rescue fire fighter that "he had just smoked a joint." Appellant's App. Vol. 2 p. 23. Buckman was also transported to Deaconess Hospital where he was admitted to surgery. A blood test at the hospital revealed that Buckman tested positive for methamphetamine and THC – the active ingredient in marijuana. A subsequent diagnostic test showed 25 ng/ml of methamphetamine in Buckman's blood. A technician explained that she was concerned about the level of meth in Buckman's system. According to the technician the drug "has a crash side effect that is similar to alcohol" and "estimate[d] Buckman ingested Methamphetamine approximately 48 to 84

hours before the accident." *Id.* at 24. Buckman later advised an investigating officer that on the Friday before the accident he and a friend "bought $50 of meth and smoked it that day." *Id.* Buckman told the officer that "he used drugs every weekend." *Id.* Police also determined that Buckman's driver's license was suspended and that Buckman did not have auto insurance on his vehicle.

[5] On July 1, 2019, the State charged Buckman with Count I Causing Death When Operating a Motor Vehicle with a Schedule I or II Controlled Substance in the Blood,[1] a Level 4 Felony; Count II Operating a Vehicle with a Schedule I or II Controlled Substance or its Metabolite in the Body[2] as a Level 6 Felony, Count III Driving While Suspended[3] a Class A Infraction, and Count IV Operating a Motor Vehicle Without Financial Responsibility[4] a Class A Infraction. In an open agreement Buckman pleaded guilty as charged.

[6] During a combined change of plea and sentencing hearing held November 22, 2019, several witnesses testified including one of the victims, a family member of the deceased victim, and members of Buckman's family. Buckman also

---

[1] Ind. Code § 9-30-5-5(a)(2) (2018).

[2] Ind. Code § 9-30-5-1(c) (2018).

[3] Ind. Code § 9-24-19-1 (2016).

[4] Ind. Code § 9-25-8-2 (2016).

spoke on his own behalf and apologized for his actions. The trial court found Buckman guilty of Count I. Citing double jeopardy concerns the trial court did not enter judgment of conviction on Count II. The trial court also found Buckman guilty of Counts III and IV. In sentencing Buckman the trial court declared in pertinent part:

> On Count I the Court will find that the aggravating circumstances which are multiple, first being the nature and circumstances of the offense resulted in injuries and damage beyond what was suffered by Darla Smith, the other folks whose property and health were damaged or impaired by your conduct. The Defendant's criminal record is an aggravator. You've been given a number of opportunities, Mr. Buckman, to get yourself straight and for whatever reason you have been unable to do so. That's certainly an aggravating circumstance. Several of those prior records or prior convictions were for substance abuse. On a number of occasions you have been given opportunities to correct that through a variety of programs and that's not worked out. The mitigators are the fact that he admitted responsibility right away and basically has from the beginning and pled guilty but the aggravating circumstances here far outweigh the mitigating circumstances calling for sentence above the standard sentence of six years.

Tr. Vol. 2 p. 33. The trial court then sentenced Buckman to ten years imprisonment in the Indiana Department of Correction. On Counts III and IV, the trial court assessed a fine of one hundred dollars each and suspended Buckman's driver's license for five years. This appeal followed. Additional facts are set forth below.

# Discussion

## I. Standard of Review

Buckman seeks to reduce the sentence imposed for his conviction on Count I pursuant to Indiana Appellate Rule 7(B) which provides that this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Specifically, Buckman seeks to reduce his sentence from ten years to eight years.

We independently examine the nature of Buckman's offense and his character under Rule 7(B) with substantial deference to the trial court's sentence. *See Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. As our Supreme Court has declared "[w]hether we regard a sentence as inappropriate at the end of the day turns on our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Id.* at 1225. The defendant bears the burden of persuading this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

# II. Appropriateness of Sentence

[9] Concerning the nature of the offense "the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The advisory sentence for Buckman's Level 4 felony conviction of causing death when operating a vehicle with a schedule I or II controlled substance in the blood is six years with a range of between two years and twelve years. *See* Ind. Code § 35-50-2-5.5 (2014). Buckman received a sentence of ten years – two years less than the maximum permissible sentence.

[10] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider "whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[11] In this appeal Buckman downplays the nature of his offense. Referring to the amount of methamphetamine found in his system and evidence that he ingested the drug days before the accident, Buckman contends "I wasn't high that day. I admitted that I got high over the weekend. This happened on Monday. I just made a bad, bad judgment call. I was trying to beat the light". Tr. Vol. 2 p. 29.

[12]     We first observe there is no evidence in the record before us explaining what level of drugs in a person's system is necessary before it has an impact on the person's judgment. In any event Buckman's implication that the THC and methamphetamine in his system did not contribute to the collision is of no moment. For a charge of operating a vehicle with a controlled substance in the body causing death or serious bodily injury, of importance is not the causal link between the person's use of a controlled substance and death or injury. *See Keckler v. Meridian Sec. Inc. Co.*, 967 N.E.2d 18, 24 (Ind. Ct. App. 2012), *trans. denied*. Instead, of import is whether the "[person's] 'driving conduct' was a substantial cause of the death or injury." *Id.* (*citing Abney v. State*, 766 N.E.2d 1175, 1178 (Ind. 2002)).

[13]     The record is clear that "high" or not, Buckman should not have been driving a vehicle at all. He did not have a valid driver's license and had no automobile insurance. This conduct alone endangered the community as a whole. Further, Buckman acknowledges that "he could have been suffering some crash effect from the [methamphetamine]." Appellant's Br. p. 9. Then, "trying to beat the light" Tr. Vol. 2 p. 29, Buckman drove through an intersection – at a speed estimated by one witness as about 60 miles per hour – and crossed the center line.

[14]     The resulting collision not only caused the death of one person, but it also resulted in injury to at least three other people. The existence of multiple victims of a crime is an appropriate justification for increasing the sentence for that crime. *French v. State*, 839 N.E.2d 196, 197 (Ind. Ct. App. 2005), *trans.*

*denied*. We conclude that the recklessness of Buckman's actions and the long-lasting harmful impact it had on others justify the trial court's imposition of an enhanced sentence in light of the nature of the offense.

The "character of the offender" standard in Appellate Rule 7(B) refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Williams v. State*, 782 N.E.2d 1039, 1051 (Ind. Ct. App. 2003), *trans. denied*. "A defendant's life and conduct are illustrative of his or her character." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018). When considering the character of the offender one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). "The significance of a criminal history . . . varies based on the gravity, nature and number of prior offenses in relation to the current offense." *Id.* And we have held that "[e]ven a minor criminal record reflects poorly on a defendant's character." *Reis v. State*, 88 N.E.3d 1099, 1105 (Ind. Ct. App. 2017).

The record shows that Buckman has a lengthy criminal record which includes six felony convictions and numerous misdemeanor convictions, twelve of which are substance abuse related including the use of methamphetamine. *See* Appellant's App. Vol. 2 pp. 45-48. Contending that he has struggled with substance abuse throughout his life, Buckman points to testimony offered by family members at the sentencing hearing that his "substance abuse was the result of childhood trauma, that he has struggled with substance abuse, and that he has helped counsel others in maintaining sobriety." Appellant's Br. p. 9.

Buckman suggests that his character should be viewed in a more favorable light than "a casual user or offender" who has not suffered the challenges "on and off with sobriety and unsuccessfully went through treatment." *Id.* at 10.

[17] Although we have recognized that a history of substance abuse may be a mitigating circumstance, *Field v. State*, 843 N.E.2d 1008, 1012 (Ind. Ct. App. 2006, *trans. denied*, we have also held that when a defendant is aware of a substance abuse problem but has not taken appropriate steps to treat it, the trial court does not abuse its discretion by declining to consider it as a mitigating circumstance. *Bryant v. State*, 802 N.E.2d 486, 501 (Ind. Ct. App. 2004) *trans. denied*. Further, "a history of substance abuse is sometimes found by trial courts to be an aggravator, not a mitigator." *Iddings v. State*, 772 N.E.2d 1006, 1018 (Ind. Ct. App. 2006), *trans. denied*.

[18] Here the trial court addressed Buckman's substance abuse issues. The court noted that Buckman has "been given a number of opportunities . . . to get [himself] straight," but has not taken advantage of those opportunities and that "[o]n a number of occasions [Buckman has] been given opportunities to correct that through a variety of programs and that's not worked out." Tr. Vol. 2 p. 33.

[19] Buckman's lengthy criminal history demonstrates that he has shown little regard for the law and has not been rehabilitated, despite the opportunities to do so. This conduct reflects poorly on Buckman's character. *See Mefford v. State*, 983 N.E.2d 232, 237-38 (Ind. Ct. App. 2013) (finding defendant's

"extensive and prolonged history of alcohol and drug use despite prior treatment does not reflect positively on his character.") *trans. denied.*

## Conclusion

[20] Buckman has failed to persuade this Court that his sentence is inappropriate in light of the nature of the offense and his character. We therefore affirm the judgment of the trial court.

[21] Affirmed.

Vaidik, J., and Crone, J., concur.