John William DAVENPORT, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 71S00–9912–CR–800.

Supreme Court of Indiana.

June 28, 2001.

---

Anthony V. Luber, South Bend, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

John William Davenport was convicted of the murder of Donna Hess and sentenced to sixty-five years imprisonment. In this direct appeal, he contends that: (1) the trial court abused its discretion in admitting inadmissible hearsay; (2) the trial court abused its discretion in refusing instructions on circumstantial evidence and the lesser included offense of reckless homicide; (3) the trial court erred during jury deliberations in failing to provide the jury with a transcript of the testimony of a witness; and (4) there was insufficient evidence of murder. We affirm the judgment of the trial court.

**Factual and Procedural Background**

On May 3, 1998, five-year-old Jeremy Dew awoke to loud noises in the kitchen of his home. Dew went into the kitchen to see what the noise was and discovered his mother, Donna Hess, and John Davenport fighting. Hess was crying and Davenport picked her up and threw her against the wall. When Dew attempted to help Hess, Davenport hit him in the head with a stick and Dew returned to bed.

When Dew awoke the next morning, he found his mother's body on the floor of the kitchen. Dew called 911 and told the operator that his mom "got beat up last night" and was dead. Dew was taken to the hospital where he told a social worker that "John" had hurt his mother. The cause of death was strangulation.

At trial, the court admitted a tape of the 911 call, a transcript of the 911 call, and Dew's statements to the social worker. There was also testimony from Shannon West, a friend of Hess, that Davenport was jealous of Hess' relationship with another man and had threatened Hess the day before she was killed. During jury deliberations, the trial court replayed the 911 tape at the jury's request. Davenport was found guilty of murder and sentenced to sixty-five years imprisonment.

**I. Hearsay**

■ Davenport challenges the trial court's admission of a tape of the 911 phone calls and Dew's statements to a social worker. He contends that both were inadmissible hearsay. The State responds that the statements were admissible under the excited utterance exception to the hearsay rule. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is inadmissible unless it falls under an exception. Ind. Evidence Rule 802. Among the exceptions to the hearsay rule is: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Ind. Evidence Rule 803(2). Determining whether a statement constitutes an excited utterance is essentially a factual determination subject to a clearly erroneous standard of review, sometimes described as the functionally equivalent abuse of discretion. *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind.1996).

 For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. *Id.* This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications. *Id.;* 13 Robert Lowell Miller, Jr., *Indiana Practice* § 803.102 (2d ed.1995); *accord Jenkins v. State*, 725 N.E.2d 66, 68 (Ind.2000).

A. *911 Tape*

 The trial court admitted an audiotape of Dew's phone call to 911 and the responding call from the 911 operator as excited utterances. In the first, Dew told the operator that his mom "got beat up last night" and was dead. When asked who beat his mother, Dew responded his father.[1] Dew then hung up, the operator called back, and Dew reiterated the information. When determining whether a statement is admissible under the excited utterance exception, "the trial court simply determines whether the evidence is sufficient to allow the trier of fact to find, by a preponderance of evidence, that the speaker was under the stress of the startling event or condition." Miller, *supra*, § 803.102, at 602. This need not be done

in any specific manner. Ultimately, the issue for the trial court was whether the call was in fact made very shortly after this five year old discovered his dead mother's body, and whether this foundation was sufficient to meet the requirements of Indiana Rule of Evidence 803(2). The trial court did not abuse its discretion in admitting the 911 tape under the excited utterance exception. Dew experienced a startling event—finding the body of his mother—and then called 911 to report this finding. This is not the situation where time passed and the witness had time to reflect. Dew testified that he called 911 immediately after finding the body. The police officers who arrived at the house a few minutes later confirmed this when they described Dew as confused, in shock, upset, and fidgety. Given this testimony, we cannot conclude that the trial court abused its discretion in admitting the 911 calls under the excited utterance exception.

 Davenport also challenges the foundation for the 911 tape. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ind. Evidence Rule 901(a). Karen DePaepe, the Communications Center Director for 911 in South Bend, testified concerning the master list of the daily 911 phone calls and described the record keeping procedures for the 911 program. That is sufficient to establish the tape as an authentic recording of calls to the 911 number.

B. *Statements to Social Worker*

 Davenport also challenged the trial court's admission of Dew's statements to a

---

1. Dew testified that he accidentally called Davenport his father and that Davenport was the person who had hurt his mother.

social worker shortly after finding the body. Dew was able to tell the social worker his name, his date of birth, and other background information. He then told the social worker, with a police officer present, that "John" hurt his mother.

■ The police officer's account of Dew's statement to the social worker was plainly hearsay because it was offered for the truth of the proposition that "John" injured Dew's mother. The trial court admitted the statement under the excited utterance exception. It seems somewhat of a stretch to conclude that a statement one half-hour after the discovery of the body was still made under the stress of the startling event. Although there is no rigid test of elapsed time, we have found the exception available one half-hour after the "startling event" only under extreme and continuing stress. *See Yamobi v. State,* 672 N.E.2d 1344, 1346–47 (Ind.1996) (a victim of a gunshot unable to move). Even if error, however, admission of this statement was cumulative of Dew's testimony and the 911 tape, and was harmless.

■ Davenport contends that because Dew did not testify about the statement at trial, it was inadmissible under Indiana Rule of Evidence 801(d)(1). This is incorrect. In the first place, the cited rule provides a path to admissibility of certain statements. It does not require exclusion of any statement. If its requirements are not met, a hearsay statement may nevertheless be admitted under other provisions. Second, Evidence Rule 801(d)(1) provides that certain statements are not hearsay if the specified conditions are met. These include that the declarant testifies at trial, is subject to cross-examination, and either: (1) the statement is inconsistent with the testimony and was given under oath at another proceeding; (2) the statement is consistent with the testimony and offered to rebut a charge of fabrica-

tion or improper motive made before the motive to fabricate arose; or (3) it is a statement of identification made shortly after perceiving the person. Under this provision, admission of Dew's statement does not turn solely on whether he testified at trial about the statement.

## II. Jury Instructions

A. *Circumstantial Evidence Instruction*

■ Davenport contends that the trial court abused its discretion in refusing his tendered instruction on circumstantial evidence. Although the trial court instructed the jury on the definitions of both direct and circumstantial evidence, it refused to give the following instruction tendered by Davenport:

Evidence may be either direct or circumstantial. Direct evidence means evidence that directly proves a fact, without an inference, and which by itself, if true, conclusively establishes that fact. Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn. An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts.

It is not necessary that facts be proved by direct evidence. Both direct and circumstantial evidence are acceptable as means of proof. Neither is entitled to any greater weight than the other.

In cases where circumstantial evidence alone is relied on, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis except guilt. If circumstances disclosed can be explained on any reasonable hypothesis except guilt or can be explained on any reasonable theory of defendant's

innocence, the defendant is entitled to acquittal. But circumstantial evidence alone may be sufficient to support a verdict of guilty, provided that the jury believe beyond a reasonable doubt that the accused is guilty as charged.

In reviewing a trial court's decision to give or refuse tendered jury instructions, this Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Cutter v. State,* 725 N.E.2d 401, 408 (Ind.2000). This instruction was not supported by the evidence because there was direct evidence of the crime. "In cases based solely on circumstantial evidence, there are generally no witnesses to the alleged crime." *Nichols v. State,* 591 N.E.2d 134, 136 (Ind.1992). Direct evidence is defined as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Black's Law Dictionary* 577 (7th ed.1999). In this case, Dew testified that he saw Davenport beating his mother and when he awoke the next day she was dead. Hess died as a result of strangulation and had thirty-nine other injuries. Dew did not witness the actual killing, but did witness the beating that led to the murder. Because there was direct evidence of the crime, the trial court did not abuse its discretion in refusing Davenport's tendered instruction on circumstantial evidence.

### B. *Reckless Homicide Instruction*

■ Davenport further contends that the trial court abused its discretion in refusing his lesser included offense instruction on reckless homicide. *Wright v. State,* 658 N.E.2d 563 (Ind.1995), sets forth a three-part test for ruling on requests to instruct the jury on a lesser included offense. Parts one and two require the trial court to determine whether the lesser included offense is either inherently or factually included in the greater offense. *Id.* at 566–67. If so, part three of *Wright* requires the trial court to determine if there is a "serious evidentiary dispute" as to any element that distinguishes the greater offense from the lesser. *Id.* at 567.

■ We review trial court rulings on lesser included offense instructions for an abuse of discretion unless: (1) the trial court made no explicit finding as to the existence of a serious evidentiary dispute, and (2) the defendant made clear the basis for the claimed dispute. *Brown v. State,* 703 N.E.2d 1010, 1019–20 (Ind.1998). In this case, the trial court found that there was no "dispute about the evidence of the attack."[2] Accordingly, we review the trial court's refusal of the lesser included offense instruction for an abuse of discretion.

■ It is well settled that reckless homicide is an inherently included lesser offense of murder. *McEwen v. State,* 695 N.E.2d 79, 85 (Ind.1998). The only element distinguishing the two offenses is the defendant's state of mind: reckless homicide occurs when the defendant

---

**2.** The trial court at first based its ruling on Davenport's claim that he did not commit the crime, stating that "defendant denied any guilt whatsoever, and there was not a substantial dispute on the distinguishing element between Murder and Reckless Homicide." This is incorrect under *Young v. State,* 699 N.E.2d 252, 256 (Ind.1998). However, the trial court later stated that "even absent his denial of involvement, I didn't see any dispute about the evidence of the attack and what inferential culpability might come from that was not in any serious dispute that I saw." This is sufficient to satisfy the *Brown* requirement.

"recklessly" kills another human being and murder occurs when the killing is done "knowingly" or "intentionally." *Compare* Ind.Code § 35–42–1–5 (1998) *with id.* § 35–42–1–1(1). Reckless conduct is action taken in "plain, conscious, and unjustifiable disregard of harm that might result." *Id.* § 35–41–2–2(c). That disregard must involve a substantial deviation from the acceptable standards of conduct. *Id.* In contrast, a person engages in conduct "knowingly" if the person "is aware of a high probability that he [or she] is doing so." *Id.* § 35–41–2–2(b).

■ Because reckless homicide is an inherently lesser included offense of murder, the issue under *Wright* becomes whether there was a serious evidentiary dispute as to the mens rea element. Hess had thirty-nine different wounds on her body, including a stab wound on her chin, blunt trauma abrasions on her head, several other stab wounds, and a pattern wound to the back of her head. She was strangled to death. This evidence is sufficient for the trial court to conclude that her murder was performed at least "knowingly," and not recklessly. Because there was no serious evidentiary dispute about the mens rea of the killing, the trial court did not abuse its discretion in refusing Davenport's tendered instruction on reckless homicide.

### III. Trial Court's Response to Jury's Note

■ Davenport also claims that the trial court erred by not providing a transcript of Dew's testimony to the jury. During deliberations, the jury sent a note to the court requesting the 911 tape and recorder, the transcript of the 911 tape, and the transcript of Dew's testimony in

court. The trial court called the jury into court with both counsel present and explained that it did not believe a transcript could be instantaneously made of Dew's testimony because the court did not have computers. The trial court also said that the jury could see the evidence only if it had a disagreement about it. After the jury was excused, the trial court learned that there was indeed a computer-aided transcription system in use and that it would take at least two hours to develop a transcript of Dew's testimony. The jury then sent another note stating that there was a disagreement about the 911 tape, requesting to listen to the tape in court. The trial court called the jury back to the courtroom, explained that a transcript of Dew's testimony could be made, but it would take several hours. The 911 tape was played. Davenport now claims that the trial court effectively prevented the jury from having access to Dew's testimony.

■ The procedure for allowing jurors to review evidence and testimony during deliberations is governed by both statute and case law. The relevant statute provides:

If, after the jury retires for deliberation: (1) there is a disagreement among the jurors as to any part of the testimony; or (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Ind.Code § 34–36–1–6 (1998).[3] In this case, the trial court called the jury into the courtroom to explain that law. At that time, the court erroneously informed the

**3.** Although not argued by Davenport, if the statute is not triggered, jury requests are evaluated under the guidelines established by our case law. *Robinson v. State,* 699 N.E.2d

jury that a transcript of Dew's testimony was not available. The jury later asked to hear the 911 tape, but not to view the transcripts of the call or Dew's testimony. The trial court then informed the jury that it had been mistaken about the availability of a transcript and that a short excerpt from Dew's testimony might be available in a relatively short time, but a complete transcript would require two hours or more. The jury never expressed a disagreement over Dew's testimony and did not renew its request. Accordingly, the statute was never triggered. Although the trial court initially mistakenly informed the jury that a transcript of Dew's testimony was not available, it rectified that mistaken impression. The jury had sufficient time to request the transcript if it had a disagreement about it. The trial court did not err in failing to provide the jury with a transcript of Dew's testimony.

## IV. Sufficiency of the Evidence

■■■■ Davenport finally contends that there was insufficient evidence to support his conviction for murder. He bases this contention on the fact that the majority of the evidence is circumstantial and Dew's testimony was inconsistent and improbable.[4] When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State*, 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences therefrom that support the verdict and will affirm a conviction if evidence of probative

value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.* Circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind.1999).

■■■ In this case there was sufficient evidence to convict Davenport of murder. Dew testified that Davenport beat his mother on the night of the murder. He heard sounds of fighting, witnessed his mother crying, and saw Davenport throw Hess into a wall. She died of strangulation. Although there were inconsistencies in Dew's testimony, the jury heard them and was free to disbelieve the testimony. There was also evidence that Davenport had threatened to harm Hess only a day before the murder because of her involvement with another man. Taken together, this is sufficient evidence from which the jury could have concluded that Davenport knowingly killed Hess.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN and RUCKER, JJ., concur.

DICKSON, J., dissents without opinion.

---

1146, 1149–50 (Ind.1998). These guidelines allow the trial court in its discretion to send evidence to the jury room based on three factors. Because Davenport neither cites to any case using these factors or explains how use of the common law would lead to a different result here, any claim based on the case law is waived. Former Ind. Appellate Rule 8.3(A)(7) (now App. R. 46(A)(8)).

4. The State characterizes this argument as "incredible dubiosity." That doctrine is limited to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt. *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994). Dew's testimony was corroborated and was not inherently improbable. Nor was there a lack of circumstantial evidence of Davenport's guilt.