**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 14 2013, 5:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH K. SMITH**
Martin & Smith
Thorntown, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE M. COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LOUIS SHEPHERD, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1304-CR-169 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Rebecca McClure, Judge
Cause No. 06D02-1206-FB-422

**November 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Louis Shepherd, Jr. appeals his conviction of Criminal Deviate Conduct,[1] a class B felony, and Criminal Confinement,[2] a class D felony, presenting the following restated issues for review:

1.   Do Shepherd's convictions of both class D felony criminal confinement and class B felony criminal deviate conduct violate double jeopardy principles?

2.   Did the trial court err in admitting evidence under the excited utterance exception to the hearsay rule?

3.   Was the evidence sufficient to support Shepherd's conviction of criminal deviate conduct?

4.   Is Shepherd's sentence inappropriate in light of his character and the nature of his offense?

We affirm in part, reverse in part, and remand with instructions.

The facts favorable to the conviction are that twenty-year-old P.G. lived with her mother and two brothers. On June 26, 2012, P.G.'s boyfriend, Conway Manning, spent the day with her at home. Sometime between 4:00 and 5:00 p.m. that day, P.G.'s mother left for the evening, leaving P.G. and her eighteen-year-old brother alone at the house. Later that afternoon, P.G.'s friend, Emily Dickerson, stopped by to visit, along with Shepherd. Manning, P.G., and Shepherd were friends. Shepherd brought two bottles of rum, from which everyone except Emily drank. Manning left the house sometime between midnight and 2:00 a.m. After Manning left, Shepherd walked Emily home. He returned to P.G.'s house at about 4:30 a.m. with his brother, Nick. By the time Shepherd arrived back at P.G.'s

---

[1]   Ind. Code Ann. § 35-42-4-2(a)(1) (West, Westlaw current with all 2013 legislation).
[2]   I.C. § 35-42-3-3 (West, Westlaw current with all 2013 legislation).

mother's house, P.G. was intoxicated. Nick helped P.G. to her bedroom, where P.G. fell asleep. When Nick left the house at about 5:00 a.m., Shepherd was on the couch and P.G. was in her bedroom.

Sometime later, Shepherd awakened and went into P.G.'s bedroom. There, P.G. and Shepherd sat at the foot of her bed, talked, and watched television. At some point, Shepherd stood up, pushed P.G. down on the bed, and removed her shorts. P.G. kicked and screamed at Shepherd to "[g]et away", *Transcript* at 350, but Shepherd persisted, holding P.G. down while he inserted his penis into her vagina. He also told P.G. that he was going to "stick[] it in [her] other hole." *Id.* at 352. P.G. continued to struggle against Shepherd, but to no avail. Shepherd placed his hand over her mouth and penetrated her anus with his penis. When Shepherd was finished he got off of P.G. and lay on the bed. P.G., who experienced pain in her anus, lay on the bed and cried for a time. P.G. then retrieved a telephone, went into the bathroom, and locked the door. In the bathroom, she called Emily, Manning, and Nick. She told Nick "something had happened with [Shepherd] and that [she] didn't know what to do." *Id.* at 355. She was unable to reach Manning or Emily, and left Emily a voicemail. P.G. then went back into the living room and tried to wake up her brother, intending to tell him what had happened. When he awakened, however, P.G. was unable to speak to him. P.G. walked around the house for a short while, then returned to her room, cried, and fell asleep.

P.G. was still asleep when her mother returned home at about 8:45 a.m. P.G.'s mother discovered Shepherd and P.G. asleep on P.G.'s bed, with Shepherd lying at the foot of the bed and P.G. asleep at the head of the bed. P.G.'s mother awakened Shepherd and told him

3

to leave. P.G.'s mother was angry because P.G. had been drinking, so P.G. did not tell her mother what had happened with Shepherd. P.G. walked to Manning's home, doing so with great difficulty because of pain she experienced in her anus and vagina. P.G. arrived at the home of Manning's parents at about 10 a.m. She was crying and looked "like complete and total terror" and "like she was completely lost." *Id.* at 315. At first, P.G. tried to speak, but could only cry. She eventually was able to tell him what had happened. The two fell asleep together, and awakened at about 4 p.m. At that point, P.G. telephoned Emily and told Emily that Shepherd had anally raped her. P.G. and Manning then returned to P.G.'s mother's home, where P.G. told her mother what had happened with Shepherd the night before.

P.G. was taken to Witham Hospital at about 6 p.m. on June 27, 2012. As P.G. walked into the hospital's triage, the triage nurse noticed that P.G.'s gait was slow and guarded. P.G. told personnel she had been raped and she was experiencing rectal pain. She also indicated that she wanted to file a police report. After speaking with a detective, P.G. was transported to St. Vincent Hospital, where she had a sexual assault examination. The examining nurse observed that P.G. had an anal tear and vaginal abrasion.

Shepherd was charged with rape as a class B felony, criminal deviate conduct as a class B felony, and criminal confinement as a class D felony. Following trial, the jury reached a hung verdict on the rape charge, but returned guilty verdicts with respect to the criminal deviate conduct and criminal confinement charges.

1.

Shepherd contends his conviction of both class D felony criminal confinement and class B felony criminal deviate conduct violate double jeopardy principles. The State concedes that Shepherd is correct.

As set out above, the jury returned guilty verdicts on both the criminal deviate conduct and criminal confinement charges. At sentencing, the prosecutor raised the double jeopardy issue, stating, "[A]nd in addition I did not address the charge for Confinement I believe [sic] has to merge because the same elements of force were used to, to get to the, the other one, so the State was asking [sic] the Court to merge that count." *Transcript* at 719. The court agreed that Shepherd could not be sentenced on both counts and that the confinement count "has to be vacated, technically". *Id.* The record provides conflicting evidence on the question of whether this was actually accomplished. The sentencing order reflects that the trial court did indeed "merge" it with the conviction of criminal deviate conduct. *See Appendix to Brief of Appellant* at 10 (with regard to the confinement conviction, the court stated on its Sentencing Order, "conviction merged with [criminal deviate conduct conviction]"). On the other hand, the abstract of judgment makes no mention of the criminal confinement conviction, which is consistent with that conviction having been vacated. Our Supreme Court has held, however, "[i]t is the court's judgment of conviction and not the abstract of judgment that is the official trial court record and which thereafter is the controlling document." *Robinson v. State*, 805 N.E.2d 783, 794 (Ind. 2004). Regrettably, the judgment of conviction in the present case was not included in the record. The CCS entry for

5

March 22, 2013, however, states: "Sentencing hearing held. Judgment of conviction entered on Count II: Criminal Deviate Conduct, Class B Felony, and the Count III: Criminal Confinement, Class D Felony." *Transcript* at 2.

Both Shepherd and the State agree that judgment of conviction on the confinement count would constitute a violation of double jeopardy principles. Therefore, if the CCS entry is accurate and the court entered conviction on the confinement verdict, it erred in doing so. The State concludes that "remand is appropriate to correct the record and vacate Defendant's conviction for criminal confinement." *Brief of Appellee* at 10. Perhaps, but not necessarily so.

In *Carter v. State,* 750 N.E.2d 778 (Ind. 2001), the defendant was found guilty of three alcohol-related driving offenses: Count 1, operating a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in one hundred (100) milliliters of the person's blood, a class C misdemeanor; Count 2, operating a vehicle while intoxicated, a class A misdemeanor; and Count 3, operating a vehicle while intoxicated with a previous conviction of operating while intoxicated within the five immediately preceding years, a class D felony. The verdicts on Counts 1 and 2 stemmed from a jury trial. After those verdicts were announced, the defendant waived his right to jury trial and Count 3 was tried to the bench. The court found the defendant guilty of Count 3. For double-jeopardy reasons, the trial court entered judgment of conviction only upon Count 3.

Upon direct appeal, a different panel of this court affirmed the conviction but sua sponte remanded with instructions to vacate the "conviction[s]" on Counts 1 and 2. *Carter v.*

6

*State*, 134 N.E.2d 600, 605 (Ind. Ct. App. 2000), *vacated,* 750 N.E.2d 778. The Supreme

Court granted transfer and affirmed the resolution of the substantive issues presented by the

defendant, but reversed the order to vacate the guilty verdicts on Counts 1 and 2, deeming it

"unnecessary" to do so. *Carter v. State,* 750 N.E.2d at 778. The Court indicated that a jury

verdict on which the court did not enter judgment is "unproblematic ... in the double jeopardy

context." *Id.* at 781. Further, the Court noted that it may do more harm than good to vacate a

jury verdict not reduced to judgment, especially if the greater offense is reversed "for reasons

specific to the incremental elements between the greater and a lesser included offense." *Id.*

at n.9. This, of course, refers to the prospect of reinstating the lesser offense upon reversal of

the greater offense.

With our Supreme Court's discussion in *Carter* in mind, we remand to the trial court

in the present case with instructions to correct the judgment of conviction such that it does

not reflect a conviction on the criminal confinement charge.

2.

Shortly after the incident, P.G. telephoned Emily. Emily was not home, so P.G. left

the following voicemail message:

> (Crying) Emily, I love you, but I need you to answer as soon as you get this
> message, but, Louis did things to me and, everything that I didn't want him to
> do and, that's basically why I can't describe it, but, I need to talk to you Emily
> I don't know who else will talk to me right now. I really don't know who else
> to talk to. I've tried to talk to Nick, and Conway, and nobody will talk to me.
> Emily, I need you to talk to me. I love you. Goodbye.

*Witness and Exhibit List*, State's Exhibit 37. Shepherd objected to this exhibit on hearsay

grounds. The trial court admitted the exhibit under the excited utterance exception to the

7

hearsay rule. Shepherd contends the trial court erred in doing so.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted in the statement. *Coleman v. State*, 946 N.E.2d 1160 (Ind. 2011). In order for a hearsay statement to be admitted as an excited utterance, the following three elements must be present: (1) A startling event occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. *Fowler v. State*, 829 N.E.2d 459 (Ind. 2005), *cert. denied*, 547 U.S. 1193 (2006). This is not a mechanical test. Rather, the admissibility of an allegedly excited utterance turns on whether the statement was inherently reliable because the witness was under the stress of the event and therefore the statement was spontaneous and the product of a lack of thoughtful reflection and deliberation. *Id.* "Determining whether a statement constitutes an excited utterance is essentially a factual determination subject to a clearly erroneous standard of review, sometimes described as the functionally equivalent standard of abuse of discretion." *Id.* at 463.

Upon appeal, Shepherd challenges the evidence only with respect to the second element, i.e., that the statement was made while P.G. was under the stress of excitement caused by the rape. "While the event and the utterance need not be absolutely contemporaneous, lapse of time is a factor to consider in determining admissibility." *Hardiman v. State*, 726 N.E.2d 1201, 1204 (Ind. 2000). More precisely, our Supreme Court has stated, "[a]lthough there is no rigid test of elapsed time, we have found the exception available one half-hour after the 'startling event' only under extreme and continuing stress."

8

*Davenport v. State*, 749 N.E.2d 1144, 1149 (Ind. 2001).

The difficulty in the present case is that we do not know with certainty how much time elapsed between the anal rape and the phone call to Emily. Nick testified that he left P.G.'s house at approximately 5:00 a.m. At that time, P.G. was in bed in her bedroom and Shepherd was on the couch. P.G. lay on the bed crying for a time after the anal rape, but she did not remember how long. She then retrieved a phone, when into the bathroom, and called Nick. P.G. spoke with Nick at approximately 7:00 a.m.; she left the voicemail for Emily at 7:40 a.m. It is clear that she called Emily beyond the "one half-hour after the 'startling event'" that the Court identified in *Davenport* as qualifying under the excited utterance exception "only under extreme and continuing stress." *Id*. It was at least forty minutes, and almost certainly a few minutes more than that. But, as we have indicated, there is no lapse of time beyond which the excited utterance exception is unavailable. Rather, "the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection." *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996).

Nick testified that when he spoke with P.G. at 7:00 a.m., she was crying and sounded as if she was "fairly drunk." *Transcript* at 553. According to Manning, P.G. looked "like complete and total terror" and was crying and unable to speak even three hours later. *Id.* at 315. Nick's description of the way P.G. sounded at 7:00 a.m. would also accurately describe the way she sounded in the voicemail left for Emily at 7:40 a.m. The exact time of the anal rape could not be established, and therefore the precise lapse of time between that event and the voicemail is uncertain, although it is beyond dispute that it was at least forty minutes.

9

Nonetheless, P.G.'s psychological state, as reflected in her voice, suggests that she was not capable of thoughtful reflection and deliberation at the time she left the voicemail for Emily, and therefore the evidence was admissible under the excited utterance exception.

Moreover, even if the evidence was improperly admitted, reversal is not warranted. "[E]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *VanPatten v. State*, 986 N.E.2d 255, 267 (Ind. 2013) (quoting *McClain v. State,* 675 N.E.2d 329, 331 (Ind. 1996)); *see also* Ind. Trial Rule 61. "In determining whether error in the introduction of evidence affected the defendant's substantial rights, this Court must assess the probable impact of the evidence upon the jury." *Id.* (quoting *McClain v. State,* 675 N.E.2d at 331). "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Cook v. State,* 734 N.E.2d 563, 569 (Ind. 2000).

P.G. testified that Shepherd anally raped her. A subsequent sexual-assault examination revealed that she had an anal tear that was consistent with her claim of forced anal sex. Medical personnel also noted that stool had leaked from P.G.'s rectum, which was consistent with injury to her anal sphincter. Moreover, Emily testified that P.G. later told her that Shepherd had anally raped P.G. In short, P.G.'s claim was corroborated by her physical injuries and her statements to Emily. Thus, the conviction was supported by substantial independent evidence of guilt and we are satisfied that there is no substantial likelihood that the alleged hearsay evidence contributed to the conviction.

10

3.

Shepherd contends the evidence was insufficient to support his conviction of criminal deviate conduct. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted).

According to I.C. § 35-42-4-2 and Ind. Code Ann. § 35-31.5-2-94 (West, Westlaw current with all 2013 legislation), in order to obtain a conviction for criminal deviate conduct on the facts of this case, the State was required to prove that Shepherd knowingly or intentionally compelled P.G. by force or imminent threat of force to commit an act involving his penis and her anus. P.G. testified that Shepherd penetrated her anus with his penis, against her will. That evidence was sufficient, by itself, to prove the elements of criminal deviate conduct. Moreover, P.G.'s testimony was corroborated by other evidence, as set out above. The evidence was sufficient to support the conviction for criminal deviate conduct.

4.

Shepherd contends his sentence was inappropriate in light of his character and the nature of his offense. We note, however, that "revision of a sentence under Indiana

11

Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." *Williams v. State,* 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis in original); *see* App. R. 7(B). Shepherd's argument on this issue focuses entirely on the validity of the aggravating and mitigating circumstances found by the trial court. He presents no argument whatsoever, much less cogent argument, concerning the inappropriateness of his sentence in light of the nature of his offense. Therefore, the argument is waived. *Williams v. State,* 891 N.E.2d 621; *see* App. R. 46(A)(8)(a).

Judgment affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and VAIDIK, J., concur.