## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2017, 9:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy J. Miles,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 24, 2017

Court of Appeals Case No.
79A04-1609-CR-2145

Appeal from the Tippecanoe
Superior Court.
The Honorable Sean M. Persin,
Judge.
Trial Court Cause No.
79D05-1512-CM-1337

**Barteau, Senior Judge**

# Statement of the Case

Timothy J. Miles appeals regarding his conviction of one count of Class A misdemeanor public indecency.[1] We affirm.

# Issues

Miles raises several issues for our review, which we reorder and restate as follows:

    I.    Whether the trial court abused its discretion by permitting the State to amend the charging information after the presentation of evidence;

    II.    Whether the trial court abused its discretion in admitting the 911 tapes at trial;

    III.    Whether there is sufficient evidence to support Miles' conviction for Class A misdemeanor public indecency;

    IV.    Whether trial counsel rendered ineffective assistance by failing to object to and move to exclude evidence relating to pre-trial and in-court identifications of Miles on the basis that they were unduly suggestive; and

    V.    Whether the trial court's sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts and Procedural History

On November 22, 2015, Erika Ford, who at the time of trial was nineteen years old, was off work from her job as a cashier at Walmart. She was shopping and

---

[1] Ind. Code § 35-45-4-1 (2013).

getting lunch with a friend at the Tippecanoe Mall. As they were leaving the mall around noon, they observed a person, later identified as Miles, meandering between the aisles of cars in the mall parking lot with his penis exposed and in his hand.

[4] Startled by what they had seen, the two quickly proceeded to Ford's car. When they arrived there, they observed Miles, standing in front of Ford's car with his penis exposed and in his hand, while looking directly at Ford. As Ford testified, "I was shocked. Kind of just surprised, you don't see that every day I guess." Tr. p. 65. She called 911 to report the incident as she and her friend left the mall parking lot.

[5] A short time later, Emma Nicoson, who at the time of trial was entering her junior year at Purdue University studying retail management, had arrived early as usual—around 12:30 p.m.—at the Tippecanoe Mall prior to her shift, which began at 1:00 p.m., at the clothing store, Charlotte Russe. She remained in her car, catching up on social media and eating a casserole her boyfriend had provided for her to eat for lunch before work. She was distracted, however, when she observed Miles urinating in the parking lot.

[6] Although at that point Nicoson did not observe Miles' genitals, she did observe the urine stream emanating from him, indicative of him urinating in public between cars in the mall parking lot. Because she was alarmed by this unusual behavior, she decided to remain in her car for as long as possible to avoid contact with him before she attempted to enter the mall to report for work.

She kept vigilant while remaining in her car, hoping that he would move along. She noticed, however, that Miles abruptly came toward her parked vehicle. He then began smacking his exposed penis against the driver's side window of her car for approximately thirty to forty-five seconds as she sat there. He then attempted to enter her car by grabbing the driver's side door handle, but it was locked. According to her trial testimony, she was able to briefly look at his face, before dialing 911 for assistance.

Once Miles became aware that Nicoson was dialing 911, he walked toward a black Volkswagen hatchback and got into the car. Nicoson was close enough to Miles' vehicle to read the license plate number—166TCO—to the 911 operator and provide a description of the vehicle. She was also able to provide a description of Miles, who she observed as he left to walk to his car. He was wearing a brown plaid jacket with a hood. Subsequent investigation revealed that the vehicle was registered to Miles.

Lafayette City Police Department Officer Jeffrey Davis was dispatched to the mall after Nicoson called 911. Although Ford had already left the scene, Officer Davis was able to meet with Nicoson, who, once again, provided a description of Miles and the vehicle.

While patrolling the area, Lafayette City Police Department Officer Jeff Rooze located the vehicle matching the description and license plate number given by Nicoson. Miles identified himself as the driver of the vehicle. Officer Rooze noted that Miles wore black leather boots, blue jeans, and "a plaid brown or

taupe colored hooded jacket." *Id.* at 89. The officer took photographs of Miles'
fully-clothed backside and Miles' vehicle.

[11] Later that same day, Nicoson identified Miles by the jacket he wore and the car
he drove. Officers also showed her a series of photographs of the backside of
Miles and of his car. When she testified, she identified Miles in court. Ford
also testified, identifying Miles in court and recounting the events that she
witnessed on the day in question.

[12] The trial court admitted the tape recordings of the 911 calls made by both Ford
and Nicoson, rejecting Miles' objection based on lack of foundation. Miles
later admitted at trial that he was the person in the photographs taken by
Officer Rooze and that other photographs were of the Volkswagen Rabbit,
which he was driving near the mall on November 22, 2015.

[13] The State charged Miles with Class A misdemeanor public indecency. After a
jury trial, he was found guilty as charged. At his sentencing hearing on August
31, 2016, the trial court sentenced Miles to 365 days executed in the
Tippecanoe County Jail. Miles now appeals.

# Discussion and Decision

## I. Amendment of Charging Information

[14] Miles argues that the trial court abused its discretion by permitting the State to
amend the charging information, also arguing that fundamental error occurred.

The State disagrees, contending that the trial court did not abuse its discretion or commit fundamental error.

[15] The State charged Miles under Indiana Code section 35-45-4-1(a), which provides that a person who knowingly or intentionally in a public place appears in a state of nudity with the intent to arouse the sexual desires of the person or another person or fondles the person's genitals or the genitals of another person commits the Class A misdemeanor offense.

[16] Prior to voir dire, the trial court stated the following:

> I'm going to start by reading the charging information that were [sic] filed in this case but I first must tell you that [] a filing of a charge is only a formal method by which the State of Indiana brings criminal charges against an individual. The filing of a charge is not evidence and should not be considered by you as any evidence of guilt. State of Indiana has charged the defendant, Timothy J. Miles as follows: Count one public indecency. That on or about August twenty-second, two thousand and fifteen in Tippecanoe County, State of Indiana, that Timothy J. Miles did knowingly or intentionally in a public place being the Tippecanoe Mall appear in a state of nudity or fondled himself or another person. That gives you a brief summary of what the case is about here today.

*Id.* at 18-19. The State informed the trial court that the incorrect month was read.

[17] Once the jury was selected, Preliminary Instruction Number 1.07 was given to the jury, and, including the correct month, read as follows:

The State of Indiana has charged the Defendant, **Timothy J. Miles**, as follows:

Count I, **Public Indecency**, reads:

On or about November 22, 2015, in Tippecanoe County, State of Indiana, **Timothy J. Miles** did knowingly or intentionally, in a public place, to wit: Tippecanoe Mall, appear in a state of nudity or fondled himself or another person.

Appellant's App. p. 12.

The trial court gave Preliminary Instruction Number 6.0400 regarding the offense of public indecency. The instruction, which was given by agreement of the parties, read as follows:

The crime of **public indecency** is defined by law in part as follows:

A person who knowingly or intentionally in a public place (a) appears in a state of nudity with the intent to arouse the sexual desires of the person or another person, or (b) fondles the person's genitals or the genitals of another person commits **public indecency,** a Class A misdemeanor.

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1.     The Defendant, **Timothy J. Miles**,

2.     knowingly or intentionally,

3.     at the Tippecanoe Mall,

4.     which was a public place,

5.     appeared in a state of nudity with the intent to arouse the sexual desires of the Defendant or another person, to wit: Emma Nicoson;

or

fondled Timothy J. Miles['] genitals[.]

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of **public indecency**, a Class A misdemeanor charged in Count I.

*Id.* at 12-13.

[19] After both the State and defense rested, the parties discussed final instructions with the trial court. The trial court, on its own, observed that the final instruction on public indecency did not track the language of the charging information, which contained no reference to the element of intent, and expressed concern that the discrepancy might lead to confusion of the jury. The State argued that a scrivener's error resulted in the inadvertent deletion from the charging information of the language regarding intent. The State further argued that the jury had been informed during the preliminary instructions that intent was an element of the offense.

[20] First, Miles argued that the amendment was untimely, being one of substance, not form, and was prejudicial to his defense.

[21] The charging information filed by the State originally read as follows:

> Information of Public Indecency
> I.C. 35-45-4-1(a) (class A Misdemeanor)
> ~~I.C. 35-45-4-1(b) (Class D Felony)~~
> The Prosecuting Attorney for the Twenty-Third Judicial Circuit of the State of Indiana informs that:
> On or about NOVEMBER 22, 2015, in Tippecanoe County, State of Indiana, **TIMOTHY J MILES** did knowingly or intentionally, in a public place, to wit; TIPPECANOE MALL; appear in a state of nudity or fondled the genitals of himself or

another person ~~with the intent to arouse the sexual desires of himself or another person in or on a public place where a child less that sixteen (16) years of age was present;~~

All of which is contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana.

Id. at 8 (with subsequent amendments handwritten).

[22] Indiana Code section 35-34-1-5(b) (2013) provides that an information may be amended in matters of substance and the names of material witnesses may be added upon written notice to the defendant at any time up to thirty days if the defendant is charged with a felony or fifteen days if the defendant is charged with a misdemeanor before the omnibus date or the commencement of trial if the amendment does not prejudice the substantial rights of the defendant. Miles contends that allowing the State to amend the information to include the language involving the element of intent was an amendment of substance and was, therefore, untimely.

[23] "A charging information may be amended at various stages of a prosecution, depending on whether the amendment is to the form or to the substance of the original information." *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014) (quoting *Fajardo v. State*, 859 N.E.2d 1201, 1203 (Ind. 2007)). Whether an amendment to a charging information is a matter of substance or form is a question of law, which we review de novo. *Id.* (citing *State v. Moss-Dwyer*, 686 N.E.2d 109, 110 (Ind. 1997)).

[24] In addition to the subsection of the statute cited above, Indiana Code section 35-34-1-5(c) provides that "[u]pon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." The State argues that the trial court's decision was based on this subsection of the statute.

[25] "A defendant's substantial rights 'include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights.'" *Gibson v. State*, 51 N.E.3d 204, 211 (Ind. 2016) (citing *Erkins*, 13 N.E.3d at 405 (quoting *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), *trans. denied*)).

[26] Miles argues that the language in the original charging information is ambiguous and can lead to different interpretations. He argues one interpretation is that he could be convicted of public indecency if he appeared in a public place in a state of nudity. Appellant's Br. p. 11. However, a conviction based on that evidence would be insufficient without proof of the element of his intent to do so to arouse his or Nicoson's sexual desires.

[27] He suggests that another interpretation is that he could be convicted if he appeared in a state of nudity or fondled the genitals of himself or another person with the intent to arouse the sexual desires of himself or another person

in a public place where a child less than sixteen years of age was present. *Id.* He claimed that there was no evidence that a child less than sixteen years of age was present at the time alleged.

[28] He contends that he should not have been found guilty under either interpretation and was prejudiced by the untimely amendment because it deprived him of a valid defense under each interpretation.

[29] At trial, Miles' defense was that he drove near the mall and through the mall parking lot, but never parked his car or got out of the vehicle because of the large number of people at the mall. He testified that he did not like to be around large groups of people. He also testified about the number (14) of black Volkswagens that were registered in Tippecanoe County. Put differently, his defense was that he was not the person who did the acts testified about and described by Ford and Nicoson.

[30] The trial court correctly observed that the inadvertent omission of the mens rea element from the charging information could hardly be described as a scrivener's error. However, the defense agreed to the preliminary instruction which contained the mens rea. Further, the amendment to the charging information made the State's case more tenuous in some respects regarding the element of intent because both women testified that Miles' penis was flaccid.

[31] Miles thoroughly cross-examined both Ford and Nicoson about what they had observed, challenging their identification of him. He was able to present his defense that he was not the person who committed the crime charged. Plus, the

defense agreed to the preliminary instruction which informed the jury of the mens rea for the offense, so Miles cannot complain he was surprised by the State's theory of the case, including the level of mental culpability involved. The trial court did not abuse its discretion by allowing the amendment.

[32] Miles additionally argues that the trial court committed fundamental error by including the mens rea in the preliminary instruction defining what the State was required to prove. Miles makes the fundamental error argument because he did not object, but instead agreed, to the preliminary instruction containing that language. He argues on appeal that the trial court erred by sua sponte amending the language of the preliminary instruction before the State moved for the amendment.

[33] On rare occasions, appellate courts may resort to the fundamental error exception to address on direct appeal claims that are otherwise procedurally defaulted. *Shoun v. State*, 67 N.E.3d 635, 640 (Ind. 2017). Fundamental error is an extremely narrow exception to the general rule requiring a contemporaneous objection. *Pattison v. State*, 54 N.E.3d 361 (Ind. 2016). It is only available when the record reveals a clearly blatant violation of basic and elementary principles such that the harm or potential for harm cannot be denied and when the violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. *Shoun*, 67 N.E.3d at 640.

[34] Because Miles agreed to the language of the preliminary instruction, the error, if any, is invited error. The invited error doctrine prevents a party from taking

advantage of an error he commits, invites, or is the natural consequence of his own neglect or misconduct. *Baugh v. State*, 933 N.E.2d 1277, 1280 (Ind. 2010).

[35] Additionally, we would be hard-pressed to hold that a trial court committed error, let alone fundamental error, by correctly instructing the jury on the law. The trial court did not deprive Miles of a fair trial.

## II. Admission of 911 Tapes

[36] Miles argues that the trial court abused its discretion by admitting the 911 tapes in evidence. Trial courts have broad discretion in ruling on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). We review its rulings for abuse of that discretion and will reverse only when admission of the evidence is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

[37] The 911 calls were introduced at trial over Miles' objection as State's Exhibits 1 through 6. He argued that neither Nicoson or Ford had personal knowledge of the chain of custody of the recordings before they were admitted.

[38] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Davenport v. State*, 749 N.E.2d 1144, 1148 (Ind. 2001). Although neither Ford nor Nicoson were familiar with the record-keeping procedures for the 911 calls, each reviewed the recordings pertinent to them prior to trial and confirmed that the recordings were an accurate reflection of the calls and identified their voices.

[39]  Assuming without deciding that the trial court abused its discretion by admitting the recordings, the error, if any, was harmless. The 911 recordings contained information that was cumulative of Ford's and Nicoson's testimony. "Even the erroneous admission of evidence which is cumulative of other evidence admitted without objection does not constitute reversible error." *Hoglund v. State*, 962 N.E.2d 1230, 1240 (Ind. 2012).

## III. Sufficiency of Evidence

[40]  Miles asserts that there is insufficient evidence that he committed public indecency as a Class A misdemeanor. To establish beyond a reasonable doubt that Miles committed the offense as charged, the State was required to prove that Miles knowingly or intentionally appeared in a state of nudity or fondled his genitals or those of another person with the intent to arouse his sexual desires or those of Nicoson.

[41]  A claim that there is insufficient evidence to support a conviction faces a steep standard of review: we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We affirm the judgment unless no reasonable factfinder could find the defendant guilty. *Id.*

[42]  Ford testified that she observed Miles in the Tippecanoe Mall parking lot, a public place, holding his exposed penis in his hand while meandering between rows of parked cars. The next time she saw him, she was in her car, and he was

standing in front of her car, staring directly at her, while holding his exposed penis in his hand. Nicoson testified that she first observed Miles urinating between cars in the Tippecanoe Mall parking lot. Next, he approached the driver's side of her car and began to repeatedly smack his exposed penis against the driver's side window. He then attempted to open the driver's side car door. It is irrelevant for purposes of the conviction that he was flaccid, because the statute required the State to prove that Miles engaged in the conduct with the intent to arouse himself or another person, not that he or the other person must have already been aroused. The evidence is sufficient to support the conviction.

## IV. Ineffective Assistance of Trial Counsel

[43] On direct appeal, Miles raises a claim of ineffective assistance of trial counsel. More specifically, he claims that his counsel should have filed a motion to suppress Ford's and Nicoson's pre-trial identification of him on the basis that the photographic display was unduly suggestive, so much so that it tainted their in-court identification of him.

[44] A showing that counsel's performance was deficient requires proof "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Brewington v. State*, 7 N.E.3d 946, 977 (Ind. 2014) (quoting *Strickland v. Washington,* 466 U.S. 558, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). On review, that determination requires us to make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"—and thus, to "indulge a strong presumption . . . that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

[45] Though a decision is hypothetically a reasonable strategic choice, it may constitute ineffective assistance if the purported choice is actually "made due to unacceptable ignorance of the law or some other egregious failure rising to the level of deficient attorney performance." *Woods v. State*, 701 N.E.2d 1208, 1212 (Ind. 1998) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 383-87, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). However, when the challenged tactic is hypothetically reasonable, overcoming the presumption of competent representation by showing an actual misstep is the defendant's burden. *Id.* at 1212 & n.5.

[46] The defendant's burden seems more daunting when he risks review of an ineffective-assistance claim on direct appeal—because counsel's reasoning may not be "apparent from the trial record," making it "necessary for an additional record to be developed to show the reason for an act or omission that appears in the trial record." *Id.* at 1212-13. Raising ineffectiveness on direct appeal without the benefit of an additional post-conviction record is

permissible, but the issue becomes *res judicata* and therefore is unavailable for collateral review. *Brewington*, 7 N.E.3d at 978.

[47] Miles challenges his counsel's decision not to file a motion to suppress Ford's and Nicoson's pre-trial identification. The decision whether to file a particular motion is a matter of trial strategy, and, absent an express showing to the contrary, the failure to file a motion does not indicate ineffective assistance of counsel. *Glotzbach v. State*, 783 N.E.2d 1221, 1224 (Ind. Ct. App. 2003).

[48] Our review begins with the presumption that trial counsel provided competent representation. During trial, Miles testified that he was the individual depicted in the photograph taken after he was stopped by Officer Rooze and that other photographs depicted his car. These admissions were not inconsistent with the theory of the defense—that Miles was not the person who did the acts testified about and described by Ford and Nicoson. Miles' counsel did not need to seek to suppress the witnesses' testimony to advance his theory of the defense. In addition, counsel cross-examined Ford and Nicoson about their identifications of Miles, thus challenging their credibility in front of the jury. Without additional development of the record, Miles has not overcome the presumption of competent representation and reasonable trial strategy. Trial counsel was not ineffective and the issue is foreclosed from further appellate review.

## V. Inappropriate Sentence

[49] Miles contends that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[50] Indiana Appellate Rule 7(B) provides, "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." On appellate review, our principal role should be to attempt to leaven the outliers without seeking to achieve a perceived correct result in each case. *Shoun*, 67 N.E.3d at 642. It is the defendant who bears the burden of persuasion that the sentence imposed by the trial court is inappropriate. *Id.*

[51] When reviewing a sentence, we first look to our legislature's determination of the sentencing range. The sentencing range for a class A misdemeanor is a term of imprisonment for a fixed term of not more than one year. Ind. Code § 35-50-3-2 (1977). Miles received a sentence of one year executed. Thus, his sentence is within the range prescribed by the legislature.

[52] Looking at the nature of the offense, we observe that Miles exposed himself to two young women in the parking lot of a mall at a time during which it was heavily occupied. By the accounts of both women, they attempted to avoid contact with Miles' due to his unusual and shocking behavior. However, Miles followed Ford and her friend after they hurried to her car, and Miles confronted Nicoson, who sat in her car, hoping to avoid any contact with him whatsoever. Both were subjected to Miles' sexually aggressive behavior. Nicoson testified that after this event she experienced a great deal of stress, fear, and anxiety.

[53] As for the character of the offender, we note that as a juvenile, Miles was warned and released for an offense that would constitute battery if committed by an adult in 1999. In the same year, no action was taken on an offense that would constitute disorderly conduct. In late 1999, Miles was placed at an alternative high school due to truancy issues. The following year a truancy action was filed in which Miles was adjudicated a delinquent with supervised probation and counseling. In 2001, he was charged with intimidation, pointing a firearm, and dangerous possession of a firearm and was waived into adult court and convicted of intimidation as a Class D felony in 2002. Further, as an adult, Miles was convicted of battery resulting in bodily injury as a Class A misdemeanor (originally filed as a Class D felony) in 2007. During the pendency of this case, he faced charges for battery upon an eleven-year-old child.

[54] Miles's sentence is not inappropriate in light of the nature of the offense and the character of the offender.

# Conclusion

[55] In light of the foregoing, we affirm the trial court's decision.

[56] Affirmed.

Baker, J., and Bradford, J., concur.